WILLIAM B. STRONG, JR. & another[1] *vs.* STONEHAM
CO-OPERATIVE BANK.

Suffolk.   May 6, 1970. — June 12, 1970.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Bills and Notes,* Acceleration clause.   *Election.*

Under an instalment promissory note and a mortgage securing it providing that failure to pay any instalment within thirty days from the due date would make the whole unpaid balance of principal "immediately due and payable at the option of the holder," commencement of proceedings by the holder to foreclose the mortgage after default in payments by the maker was an effective election to exercise the option, and an unaccepted tender thereafter made by the maker of the entire amount in arrears was ineffectual.

───────────────────

[1] Gloria F. Strong.

BILL IN EQUITY filed in the Superior Court on September 30, 1969.

The suit was heard by *Rose*, J., on a master's report.

*Alfred C. Walton (Kenneth A. Currie* with him) for the defendant.

WILKINS, C.J. This suit in equity by a husband (plaintiff) and wife, mortgagors of three pieces of improved real estate, against the mortgagee bank seeks an adjudication that the mortgages are not in default, and that the bank has no right to increase the interest rate as a condition of bringing payments up to date, or for seeking future payments, and asks injunctive relief. The case was referred to a master, whose report was confirmed.

On July 22, 1965, the plaintiffs obtained a loan from the defendant bank in the amount of $17,500 secured by a mortgage of real estate at 6 Call Street, Billerica, and signed a direct reduction real estate loan promissory note and mortgage to the bank or order payable within twenty years with interest at the rate of $5\frac{1}{2}$ per cent per annum in instalments of $120.39 payable on the twenty-fifth day of each month.

The note contained the provision: "Failure to pay any of said installments within thirty (30) days from the date when the same becomes due or to carry out the terms and conditions of the mortgage given as collateral security for this note shall make the whole of the balance of said principal sum immediately due and payable at the option of the holder hereof."

On August 10, 1965, the plaintiffs obtained a second loan from the defendant bank in the amount of $24,000 and signed a direct reduction real estate loan promissory note payable within twenty years with interest at the rate of $5\frac{1}{2}$ per cent per annum in monthly instalments of $165.10 on the fifteenth day of each month. The note was secured by a mortgage of real estate at 11 Wilton Drive, Wilmington, and contained provisions similar to those of the previous note.

On December 23, 1965, the plaintiffs obtained a third

loan from the defendant bank in the amount of $19,200, and signed a direct reduction real estate loan promissory note payable within twenty years with interest at the rate of 5½ per cent per annum payable on the fifteenth day of each month. The note was secured by a mortgage of real estate at 15–17 Pollard Street, Billerica, and contained provisions similar to the two earlier notes.

The three mortgages were recorded in the Middlesex North District registry of deeds.

All the mortgages provided: "This mortgage is upon the statutory condition and upon the further conditions that the provisions of General Laws Chapter 170 (Acts of 1950, Chapter 371) and any amendments thereof shall at all times be complied with and upon the further condition that the mortgagor shall pay to the mortgagee monthly, in addition to all other payments hereinbefore set forth, an amount equal to one-twelfth (1/12) of the last annual tax bill covering said property, which amount shall be applied by the mortgagee to the payment of taxes when they shall become due, and any balance due thereon shall be paid by the mortgagor as provided for in said statutory conditions; the amount to be paid for taxes shall be adjusted in November of each year based on the tax bill for that year." "Failure to comply with the conditions under which this mortgage is written or failure to make any of the payments as required in the note secured hereby within thirty (30) days from the date when the same becomes due notwithstanding any license or waiver of any prior breach of conditions shall make the whole of the balance of said principal sum immediately due and payable at the option of the holder hereof."

"The holder hereof shall have the statutory power of sale for any breach of any of the conditions or provisions of this mortgage or the note secured hereby."

On June 18, 1968, the plaintiffs entered into amending agreements on the properties at 6 Call Street and 15–17 Pollard Street entitled, "Agreement for Changes on Direct Reduction Mortgage" (G. L. c. 170, § 24, subsection 8).

For 6 Call Street, the monthly payment of principal and interest beginning June 25, 1968, was raised to $135.19, computed on the basis of $16,100 for seventeen years with 7 per cent interest. For 15–17 Pollard Street the monthly payment of principal and interest was raised to $148.14, computed on the basis of $17,900 for seventeen and one-half years at 7 per cent interest.

Each of the amending agreements of June 18 contained the provisions, "Except as changed by this agreement, all terms, provisions and conditions of said mortgage and of the note secured thereby shall remain in full force and effect and the failure by the party of the second part to make any payment or comply with any other provision of this agreement or of said mortgage or note as changed hereby, shall constitute a breach of condition for which the unpaid balance of the mortgage debt shall, at the option of the Bank, or its assigns, become due and payable forthwith, and may be enforced or recovered together with interest and other lawful charges as provided in General Laws, Chapter 170, Section 24, Sub-Section 11, as amended, and in other applicable provisions of law."

Prior to March 21, 1969, the plaintiffs were in arrears on the monthly payments on all the mortgages and had been so notified by letters from the bank. In the next month there were letters from the bank about the deficiencies in the payments of 1968 real estate taxes and threatening foreclosure. On or about July 25, 1969, the bank commenced proceedings to foreclose the mortgages on 11 Wilton Drive and 6 Call Street, and on or about August 27, 1969, the bank commenced foreclosure proceedings on 15–17 Pollard Street. These proceedings are pending in the Land Court.

On August 21, 1969, the bank informed the plaintiffs' attorney of the amounts by which each mortgage was in arrears, the total being $5,906.86. On September 10, 1969, at the bank the plaintiff tendered a certified check in the amount of $5,906.86 to the treasurer of the bank in payment of the amount he believed to be the aggregate then due. The treasurer refused the check, stating that the bank

wanted an increase in the interest rates to 8½ per cent per annum. On the same occasion the treasurer dictated a letter to the plaintiff's father in the plaintiff's presence. This letter stated in part, "We are unable to accept your check to bring mortgages up to date [at the address of the premises on each of the mortgages] . . . Until enclosed agreements for change of rates on all properties have been signed by . . . [the plaintiffs and second mortgagees], any payments will be unacceptable." The plaintiff also had several meetings with the president of the bank between the latter part of April, 1969, and the middle of September, 1969. At a meeting shortly before September 10, 1969, the president insisted on an increase in mortgage interest to 8½ per cent, and at the April, 1969, meeting he refused to accept a payment tendered by the plaintiff of a substantial portion of the deficiency in the monthly instalments then due.

On September 10, 1969, the mortgage on 15–17 Pollard Street was six months in arrears (March through August). The mortgage on 6 Call Street was seven months in arrears (February through August), and the mortgage on 11 Wilton Drive was seven months in arrears (February through August). The aggregate amount of arrears was $5,906.86 on that date but the defendant would not have accepted payment of that amount or of any other greater amount, had a greater amount been in arrears, on that date unless the plaintiffs and junior mortgagees signed the agreements to increase the interest on each of the three mortgages to 8½ per cent.

The plaintiffs never agreed to the proposed increase to 8½ per cent or any other amount. At no time did the plaintiffs receive any request or demand from the defendant bank to pay the entire unpaid balance of any of the three mortgages.

A final decree was entered on December 31, 1969, declaring (paragraph 1) that the plaintiffs as of September 10, 1969, are indebted to the defendant for principal and interest and other lawful charges on the three mortgages in the amount of $5,906.86. The decree ordered (paragraph 2) the defendant to compute the payments of principal, interest,

and amounts to be applied to real estate taxes accruing from September 10, 1969, to the date of the computation, and (paragraph 3) to notify the plaintiffs of the result of the computation, and the plaintiffs to pay the defendant the computed sum plus $5,906.86. The decree provided (paragraph 4) that upon payment by the plaintiffs in accordance with the decree the defendant shall be permanently restrained from pursuing foreclosure proceedings against the three parcels of real estate for any default allegedly occurring prior to the receipt of the notice required under paragraph 3, and costs are to be awarded the plaintiffs. There was a provision (paragraph 5) that should the plaintiffs fail to make payment in accordance with the decree, the bill is to be dismissed with costs to the defendant. The defendant appealed.

The plaintiffs rely on *Wilshire Enterprises, Inc.* v. *Taunton Pearl Works, Inc.* 356 Mass. 675, 678, in which the mortgagor brought a bill in equity to restrain a foreclosure. There we said, "Under the clause in the case at bar a default in payment requires a positive act, a decision to accelerate by the creditor. Payment of the overdue instalment prior to the time the option is exercised removes the conditions upon which the exercise may be based."

This case is not applicable because foreclosure proceedings were brought in the Land Court before tender was made on September 10, 1969. "In most jurisdictions the bringing of a foreclosure action is a sufficient election unless the mortgage expressly requires the giving of notice before starting the action." Am. Law of Property, § 16.193. In *Gunby* v. *Ingram,* 57 Wash. 97, 99, it was said, "It was decided by this court . . . that an option in a mortgage note to declare the whole debt due for default in payment of interest could not be exercised after lawful tender of an overdue interest installment, and that some affirmative action must be taken by the creditor to announce the election . . .; and we have decided that the commencement of an action before the tender of the amount due was one way in which such option could be exercised." Accord:

*Clark* v. *Paddock,* 24 Idaho, 142, 150; *Pizer* v. *Herzig,* 120 App. Div. (N. Y.) 102, 105; 36 Am. Jur., Mortgages, § 394. See *Swearingen* v. *Lahner,* 93 Iowa, 147, 152; *Hawes* v. *Detroit Fire & Marine Ins. Co.* 109 Mich. 324, 326; *S. D. Walker, Inc.* v. *Brigantine Beach Hotel Corp.* 44 N. J. Super. 193, 202; *Jacobson* v. *McClanahan,* 43 Wash. 2d 751, 754.

The decree is reversed and further proceedings are to be held in accordance with this opinion.

*So ordered.*