BANK OF HONOLULU, N.A., Plaintiff-Appellee, Cross-Appellant *v.* LILLY C. ANDERSON, Defendant-Appellant, Cross-Appellee, and JOHN and MARY DOES 1-20, and DOE PARTNERSHIPS, CORPORATIONS or other ENTITIES 1-20, Defendants

NO. 8399

(CIVIL NO. 63797)

DECEMBER 3, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In this action, plaintiff Bank of Honolulu, N.A. (the Bank) sought to cancel or, in the alternative, to foreclose on an agreement of sale of real property entered into with defendant Lilly C. Anderson (Anderson). Anderson appealed from the order granting the Bank's motion for summary judgment and the decree foreclosing her interest in the agreement of sale. The Bank cross-appealed. We affirm.

The issues on appeal are:

    1. Whether the decree of foreclosure is void for uncertainty.

    2. Whether the court erred in granting the Bank's motion for summary judgment.

    3. Whether the court erred in not ordering cancellation of the agreement of sale.

On March 14, 1978, the Bank, as vendor, and Anderson, as purchaser, entered into an agreement of sale (the Agreement) involving leasehold property located on Portlock Road, Honolulu.[1] The Agreement stipulated a purchase price of $825,000, of which $45,725 was a down payment. The balance of $779,275, together with interest of 8¾% per annum, was to be paid as follows: $36,783.36 representing payments for the first six months to be prepaid, and $6,130.56 monthly from November 1, 1978. The purchaser was required additionally to pay real property taxes, lease rent, insurance premiums and improvement assessments pro rata monthly in advance. The maturity date of the Agreement was March 14, 1983.

Anderson had a fairly good payment record until September 1979. Thereafter, due to nonpayment, the Bank filed suit to cancel

---

[1] This is the same leasehold property involved in *Sturkie v. Han*, 2 Haw. App. 140, 627 P.2d 296 (1981).

the Agreement. In July 1980, Anderson made payments to clear all arrearages and brought her account current through June 1980. The Bank dismissed the suit.

After the July 1980 payment was made, Anderson's account again became delinquent. On December 9, 1980, the Bank's attorney sent to Anderson by certified mail a notice of cancellation of the Agreement. On December 16, 1980, an affidavit of cancellation of the Agreement was recorded in the Bureau of Conveyances.

In the meantime, on December 12, 1980, the Bank filed a complaint to cancel the Agreement and retain all payments made by Anderson or, in the alternative, to foreclose Anderson's interest therein. On April 3, 1981, the Bank filed its motion for summary judgment.

On May 11, 1981, the order granting the motion for summary judgment (the Order) was filed. In the Order, the court did not cancel the Agreement but treated the Bank's action as an acceleration of all amounts due and owing under the Agreement and decreed foreclosure, if Anderson failed to pay such amounts within forty-five days from May 1, 1981.

Anderson failed to pay the amounts due within the time specified, and the decree of foreclosure (the Decree) was entered on July 10, 1981. On August 4, 1981, Anderson filed a notice of appeal. The Bank cross-appealed on August 18, 1981.

I.

We focus first on the question of appellate jurisdiction. The Bank contends that the appealable "final order" was the Order, that Anderson's notice of appeal filed on August 4, 1981 was untimely, and that this court lacks appellate jurisdiction. We disagree.

The Bank admits that a decree of foreclosure of mortgage or other lien is deemed final for purposes of appeal. *Independence Mtge. Trust v. Glenn Constr. Corp.*, 57 Haw. 554, 560 P.2d 488 (1977); *Powers v. Ellis*, 55 Haw. 414, 520 P.2d 431 (1974); *MDG Supply v. Diversified Inv.*, 51 Haw. 375, 463 P.2d 525 (1969); *Sturkie v. Han*, 2 Haw. App. 140, 627 P.2d 296 (1981). However, the Bank claims, that in the case before us, the Decree is not the appealable "final order." Citing *MDG Supply, supra,* the Bank argues that the Order determined the merits of the controversy and the Decree only implemented or gave effect

to the order. *M. F. Williams, Inc. v. City and County,* 3 Haw. App. ____, 650 P.2d 599 (1982), holds otherwise.

In *M. F. Williams, Inc., supra,* we held that an "order granting and denying the motions [for summary judgment] is not a 'judgment' as that word is used in Rules 54(a), 58, and 73(a), HRCP, and Rule 23, Rules of the Circuit Court of the State of Hawaii (1971)." *Id. at* ____, 650 P.2d at 601-02 (footnotes omitted). Therefore, we hold that the Decree was the "judgment" or "final order" for appeal purposes, and Anderson's notice of appeal was timely.

## II.

For the first time on appeal, Anderson contends that the Decree is void for uncertainty. The gist of her contention is that the Decree failed to ascertain and specify the amount of indebtedness due and owing under the Agreement, so the Decree is void.[2]

An appellate court generally will not consider a question which was not raised in the lower court. *Kawamoto v. Yasutake,* 49 Haw. 42, 410 P.2d 976 (1966); *Re Guardianship of Matsuoka,* 45 Haw. 83, 363 P.2d 964 (1961). However, a court will deviate from this rule when justice otherwise requires. *Earl M. Jorgensen Co. v. Mark Constr., Inc.,* 56 Haw. 466, 540 P.2d 978 (1975); *Cabral v. McBryde Sugar Co., Ltd.,* 3 Haw. App. 223, 647 P.2d 1232 (1982); *In re Keamo,* 3 Haw. App. 360, 650 P.2d 1365 (1982). Anderson has charged that the Decree is void and therefore subject to direct or collateral attack. *See* 46 AM.JUR.2d *Judgments* § 641 (1969). Thus, justice compels us to address this issue.

---

[2] We view such appeal tactics with disfavor. The Order was approved as to form by Anderson's counsel. The Order included the words "if defendant Lilly C. Anderson fails to pay plaintiff Bank of Honolulu all amounts due and owing under the Agreement of Sale within 45 days of May 1, 1981, this Court will make and enter its order and decree for the foreclosure of the Agreement of Sale." (Record at 176-77.) The Order did not specify in dollars and cents the "amounts due and owing," but Anderson's counsel made no objection. It is clear from the record that on or about June 16, 1981, the proposed Decree was presented to Anderson's counsel for approval. He objected to the entry of the Decree. Consequently, on July 10, 1981, a hearing was held to settle the proposed Decree. Anderson's counsel made no objection to the proposed Decree on the ground that it failed to specify the amount of outstanding indebtedness. (Transcript of July 10, 1981 Proceedings.) Anderson had ample opportunity to object to the form of the Decree, which she failed to do.

Anderson refers to Hawaii Revised Statutes (HRS) § 667-1 (1976)[3] which reads:

> § 667-1 *Foreclosure by action.* The circuit court may assess the amount due upon a mortgage, whether of real or personal property, without the intervention of a jury, and shall render *judgment for the amount awarded,* and the foreclosure of the mortgage. Execution may be issued on the judgment, as ordered by the court. [Emphasis added.]

She argues that HRS § 667-1 requires the court to render a "judgment" which determines that a certain sum of money is due before ordering foreclosure of the mortgage and sale of the secured property. She claims that a decree of foreclosure which does not include a determination of the amount of outstanding mortgage indebtedness is void for uncertainty. She urges that the same rule applies to foreclosure of an agreement of sale.

We construe HRS § 667-1 merely to confer "specific authority to render a *deficiency judgment,* as an incident to the foreclosure" (emphasis added). 2 Committee on Coordination of Rules and Statutes, Report of Committee on Coordination of Rules and Statutes (1971).[4] Thus, HRS § 667-1 does not require the determination of a sum certain before foreclosure is decreed since a deficiency judgment is rendered only after the sale of the mortgaged property. *See Independence Mtge. Trust, supra,* at n.1.

---

[3] Hawaii Revised Statutes (HRS) § 667-1 (1976) is a part of HRS Chapter 667 dealing with mortgage foreclosures.

[4] House Spec. Comm. Rep. No. 9, 6th Hawaii Leg., Reg. Sess., *reprinted in* House Journal 1115, 1131 (1972), states:

> The Reporter's notes set forth in The Report of the Committee on Coordination of Rules and Statutes are not necessarily the views of the Committee on Coordination nor of your Committee. However, your Committee found the notes helpful; and in general they represent the reasons for the changes. Where your Committee has not accepted the recommendations of the Committee on Coordination and made other changes, this Committee Report explains the changes made.

Similar language is found in Senate Spec. Comm. Rep. No. 7, 6th Hawaii Leg., Reg. Sess., *reprinted in* Senate Journal 697, 714 (1972).

The only change made to HRS § 667-1 was the deletion of an unnecessary phrase. House Spec. Comm. Rep. No. 9, *supra,* at 1125; Senate Spec. Comm. Rep. No. 7, *supra,* at 707.

Stated in another way, the issue raised by Anderson is whether a decree of foreclosure which does not specify the actual amount due and owing is a valid decree. If it is, then it is final, enforceable and appealable. *Independence Mtge. Trust, supra.* If it is not, then it is not final nor enforceable nor appealable. We hold that such a decree is valid.

To be entitled to a decree of foreclosure, the Bank was required to prove Anderson's default. It was not required to prove the exact amount owed under the Agreement until after the confirmation of the foreclosure sale. Consequently, despite lacking the specific amount of indebtedness, the Decree is valid.

### III.

Anderson argues that the lower court erred in granting the Bank's motion for summary judgment on two grounds. First, she claims that genuine issues of material facts remained in the case. Second, Anderson contends that since the default was cured as a matter of law, the granting of the motion was error.

### A.

Under Rule 56, Hawaii Rules of Civil Procedure (1980) (HRCP), the granting of summary judgment is appropriate if, from the record, no genuine issue as to any material fact exists and the movant is entitled to prevail as a matter of law. *Hulsman v. Hemmeter Development Corp.,* 65 Haw. 58, 647 P.2d 713 (1982); *Molokai Homesteaders Cooperative Ass'n. v. Cobb,* 63 Haw. 453, 629 P.2d 1134 (1981); *Windward Partners v. Lopes,* 3 Haw. App. 30, 640 P.2d 872 (1982). In the disposition of the motion, the court, as well as the reviewing court, must view the facts set forth in the depositions, answers to interrogatories, admissions and affidavits and inferences therefrom in the light most favorable to the party opposing the motion. *Iuli v. Fasi,* 62 Haw. 180, 613 P.2d 653 (1980); *Technicolor, Inc. v. Traeger,* 57 Haw. 113, 551 P.2d 163 (1976); *Windward Partners v. Lopes, supra.*

For purposes of ruling on a motion for summary judgment, a fact is material if proof of that fact would establish or refute one of the essential elements of the cause of action or defense asserted by the parties. *City & County v. Toyama,* 61 Haw. 156, 598 P.2d 168

(1979); *Hunt v. Chang,* 60 Haw. 608, 594 P.2d 118 (1979).

To be entitled to the remedy sought, the Bank was required to prove the following material facts: (1) the existence of the Agreement, (2) the terms of the Agreement, (3) default by Anderson under the terms of the Agreement, and (4) the giving of the cancellation notice and recordation of an affidavit to such effect. *See* 55 AM. JUR.2d *Mortgages* § 554 (1971); 3 R. POWELL, REAL PROPERTY ¶ 463 (1981).

There is no dispute as to the existence of the Agreement and the terms therein. In her answer filed on March 30, 1981, Anderson admits that "on or about March 14, 1978, Plaintiff and she entered into an Agreement of Sale dated March 14, 1978, recorded in the Bureau of Conveyances in Liber 12768 at Page 452 and that a true and exact copy of said Agreement is attached to the Amended Complaint as Exhibit 1." (Record at 91.)

Anderson also admits that she was in default of the terms of the Agreement. In her affidavit filed on April 29, 1981, Anderson states, "I failed to make payments for the months of September, October, November and December of 1980 and January, February, and March 1981." (Record at 134.) Paragraph 18 of the agreement of sale explicitly states in part that "Purchaser shall be deemed to be in default in the event Purchaser fails to pay as and when due any sum of money required to be paid under this agreement; . . . ." (Record at 72.)

Paragraph 19b of the Agreement provides that if the Bank desires to cancel the Agreement due to Anderson's default, it must give written notice to her, and record an affidavit stating that notice had been given and the agreement had been cancelled. The affidavit of the Bank's counsel states that written notice was mailed to Anderson on December 9, 1980 and the requisite affidavit recorded on December 16, 1980. (Record at 108-113.)

Seizing on a technicality, Anderson claims that there is a genuine issue as to whether the required notice was given. She argues that paragraph 21 of the Agreement provides that notices shall be mailed or delivered "to the appropriate address written on the first page of this agreement or to such other appropriate address as the party addressed has previously communicated in writing to the other party" (Record at 74); that her address listed on the Agreement is 1429 Laamaia Street, Honolulu; that the Bank's counsel mailed the

notice to 565 Portlock Road, Honolulu and to 16222 Soriano Drive, Hacienda Heights, California; and thus the notice was defective or improper. This is not a genuine issue of fact. Prior to December 9, 1980, the Bank had mailed communications to Anderson to the Portlock Road address. (Record at 160, 161.) Anderson made no objection to that procedure. Another bank, the Bank of America, had sent a letter to Anderson at the Portlock Road address. (Record at 172.) The property subject to the agreement of sale was located at the Portlock Road address. Under the circumstances, as a matter of law, the notice given by the Bank through its counsel was sufficient and proper.

Anderson further argues that the affidavits filed by the parties show that a dispute remains as to the exact amounts of interest, lease rents, real property taxes and utility charges for electricity due under the Agreement and as to the value of property improvements made by her. These do not involve *material* facts. To be entitled to the remedy of foreclosure of Anderson's interest in the Agreement and the sale thereof, the undisputed fact that Anderson was in default was sufficient. The exact amounts of interest and other charges and credits, if any, could be determined after the confirmation of the foreclosure sale.

We conclude that there was no genuine issue of any material fact extant.

B.

Anderson also contends that the "payments" made on April 22, 1981 brought the Agreement current and cured the default. Therefore, she argues, the court erred in granting the Bank's motion.

On April 22, 1981, the day before the scheduled hearing on the Bank's motion, Anderson delivered two checks in the amounts of $59,960.77 and $15,066.00 to Norman Y. M. Lee, assistant vice president of the Bank. These amounts allegedly were sufficient to bring Anderson's account current through June 1981. In a supplemental affidavit filed on April 30, 1981, Lee states that the checks were left on his desk because of Anderson's insistence; that the Bank had not negotiated the checks since its position was that the Agreement had been cancelled; and that the Bank was prepared to return them to Anderson at any time convenient to her. (Record at 164.) On

May 12, 1981, the day after the Order was filed, the Bank negotiated the checks and credited Anderson's account. The Bank reasoned that, since the Order denied cancellation and ordered foreclosure of the Agreement, it was proper to apply the proceeds of the checks to Anderson's account. Prior to May 12, 1981, Anderson had not sought to reclaim the two checks. (Record at 183.)

The general rule is that the exercise of an option to accelerate the payment of the debt secured by a mortgage is not affected by a subsequent tender of the arrearages. *Petti v. Putignano,* 8 Mass. App. 293, 393 N.E.2d 935 (1979); *Strong v. Stoneham Co-Operative Bank,* 357 Mass. 662, 260 N.E.2d 646 (1970); *Campbell v. Werner,* 232 So.2d 252 (Fla. 1970); *Mayer v. Myers,* 155 N.Y.S.2d 129 (1956); *Law v. Edgecliff Realty Co.,* 133 N.Y.S.2d 418 (1954); *Thielecke v. Davis,* 260 S.W.2d 510 (Mo. 1953).

In the case before us, the lower court treated the Bank's December 1980 cancellation of the Agreement as an acceleration of all amounts due and owing thereunder. The total amount having become due, the tender of the checks on April 22, 1981 came too late to cure the default, and it was proper for the Bank to have negotiated the checks and credited Anderson's account. As a matter of law, Anderson did not cure her default. The granting of the Bank's motion was not in error.

## IV.

In its cross-appeal, the Bank contends that the lower court erred in not ordering cancellation of the Agreement as permitted by its terms.

We find no abuse in the lower court's exercise of its equitable powers and discretion in ordering foreclosure rather than cancellation. Ironically, the Bank's argument in its own brief strongly supports this proposition. The Bank argues thusly:

In deciding the rights and liabilities of parties under an agreement of sale a court is vested with certain equitable powers to construct alterantive [sic] forms of relief which will be fair and equitable to all parties involved. *Jenkins v. Wise,* 58 Haw. 592 (1978). In consideringing [sic] Bank of Honolulu's motion to cancel the agreement of sale the court exercised the discretion referred to in *Jenkins v. Wise* to treat the notice of cancellation

filed by the Bank as a demand for acceleration. This was certainly within its discretion because it was clearly the intent of Bank of Honolulu that if it not be permitted to cancel, that it be permitted to foreclose the agreement of sale and obtain a judgment for all amounts due thereunder.

Answering Brief of Bank of Honolulu at 27-28.

Affirmed.

*Wesley H. Ikeda* for defendant-appellant, cross-appellee.

*Gregory P. Conlan (Chun, Kerr & Dodd,* of counsel) for plaintiff-appellee, cross-appellant.