**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000924
21-JUN-2023
07:58 AM
Dkt. 153 MO**

NO. CAAP-17-0000924


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


SHARMAN M. OYADOMARI, Trustee of the Kikuko Kuwahara
Irrevocable Grantor Trust dated April 26, 2013,
Plaintiff-Appellee, v. HQHQ, INC., a Hawaiʻi corporation; and
WILLIAM S. QUINN, Defendants-Appellants, and
BRIAN M. HYATT; and DOE DEFENDANTS 1-10,
Defendants-Appellees.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 3CC16-1-000411)


<u>Memorandum Opinion</u>
(By:  Ginoza, Chief Judge, Wadsworth and McCullen, JJ.)


Defendants-Appellants HQHQ, Inc. (**HQHQ**) and William S.

Quinn (**Quinn**) appeal from nine orders and judgments of the

Circuit Court of the Third Circuit involving judicial

foreclosure and confirmation of sale proceedings brought by

Plaintiff-Appellee Sharman M. Oyadomari (**Oyadomari**).[1]

---

[1]  HQHQ and Quinn appeal from the following orders and judgments:

   (1)  October 13, 2017 "Order Denying Defendant William S.
        Quinn's Motion for Order Compelling Plaintiff
        Sharman M. Oyadomari, Trustee to Accept Full Payment of

(continued . . .)

On appeal, HQHQ and Quinn raise two points of error, alleging (1) the circuit court erred in failing to grant relief from the interlocutory decree of foreclosure and (2) all orders

---

(. . . continued)

the June 20, 2008 Promissory Note, Filed on October 9, 2017 and Granting Plaintiff's Motion to Confirm Sale, Filed on July 31, 2017";

(2) November 24, 2017 "Order Denying Motion for Leave to File Defendant William S. Quinn's Counterclaim and Crossclaim, Filed on October 10, 2017 and Motion for Reconsideration of October 13, 2017 Ruling Denying Defendant William S. Quinn's Motion for Order Compelling Plaintiff Sharman M. Oyadomari, Trustee to Accept Full Payment of June 20, 2008 Promissory Note (and Objection to Plaintiff's Notice of Submission Dated October 24, 2017[)], Filed on November 2, 2017";

(3) November 28, 2017 "Order Denying Defendant William S. Quinn's Motion for Order Compelling Plaintiff Sharman M. Oyadomari, Trustee to Accept Full Payment of the June 20, 2008 Promissory Note";

(4) November 28, 2017 "Findings of Fact [(**FOF**)], Conclusions of Law and Order Granting Plaintiff's Motion to Confirm Sale";

(5) November 28, 2017 Writ of Possession;

(6) November 28, 2017 Judgment;

(7) January 24, 2018 "Order Granting Plaintiff's Motion to Alter or Amend Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion to Confirm Sale Filed November 28, 2017";

(8) January 24, 2018 "Order Denying Defendant William S. Quinn's Motion to Strike Plaintiff's Motion to Alter or Amend Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion to Confirm Sale Filed November 28, 2017"; and

(9) January 24, 2018 Amended Judgment.

The Honorable Harry P. Freitas presided over the October 13, 2017 order denying Quinn's motion to compel Oyadomari to accept full payment and granting Oyadomari's motion to confirm the sale.

The Honorable Henry T. Nakamoto presided over all other orders and judgments.

entered after the October 13, 2017 order require reversal.  We affirm.

### I.    BACKGROUND

**A.    Factual Background**

According to Quinn, his family founded Pahoa Feed and Fertilizer as a sole proprietorship in 2000.  Quinn explains that, in 2002, Brian M. Hyatt's (**Hyatt**) family and Quinn's family incorporated Pahoa Feed and Fertilizer under HQHQ, Inc., a Hawaiʻi corporation, consisting of a 50-50 ownership between the two families.

On June 20, 2008, HQHQ executed a promissory note (**Note**), promising to repay Yoso and Kikuko Kuwahara (**Kuwaharas**), in their capacity as trustee of their respective revocable living trusts, for a $445,000.00 loan with an interest rate of six percent per year.  The Note required HQHQ to pay the Kuwaharas $3,500.00 every month until June 6, 2015, at which time HQHQ would be required to pay the balance of the Note.

Quinn and Hyatt each personally guaranteed HQHQ's obligations under the Note.  FOF 4.  The loan was secured with a **Mortgage** on a **Property** in Puna on the island of Hawaiʻi.  FOF 2, 3.  The Mortgage was recorded in the Bureau of Conveyances on June 25, 2008.

Kikuko Kuwahara (in her capacity as Trustee of the Kikuko Kuwahara Revocable Living Trust Agreement dated

3

September 15, 1986, as amended, and as Successor Trustee of the Yoso Kuwahara Revocable Living Trust dated March 3, 1977, as amended) assigned the Note and Mortgage to Oyadomari in 2013, and recorded the assignment in the Bureau of Conveyances. Per this assignment, Oyadomari had "all right, title and interest in and to" the Note and Mortgage, including the "obligation and power to discharge Mortgage through the execution and delivery of a release of this Mortgage."

According to correspondence Quinn attached to his and HQHQ's memorandum in opposition to the commissioner's motion for leave to sell without an open house, Quinn and Oyadomari were negotiating the terms of a purchase money mortgage for the property in May 2015, a month before the Note became due.[2]

On June 6, 2015, the Note became due with a principal balance of $312,305.73 and interest accruing at a rate of six percent per year. FOF 6, 9. HQHQ, Quinn, and Hyatt (collectively **Defendants**) failed to pay the amount owed. FOF 7.

In letters dated June 24, 2015 and February 19, 2016, Oyadomari made demands on Defendants to pay the balance due. FOF 7. Despite the demands for payment, Defendants "failed to pay the amounts owed under the Note." FOF 8.

---

[2] Quinn represented to the circuit court that, around this time, the Hyatt and Quinn families realized "future business opportunities were best pursued separately as we were at an impasse regarding the direction of the business and did not work well as business partners." Quinn also submitted to the circuit court a letter from Hyatt indicating a willingness to relinquish his family's interest in HQHQ if certain demands were met.

Correspondence Quinn submitted to the circuit court indicated that the parties continued negotiating a new loan, but in June 2016, Oyadomari's attorney stated, "We have a foreclosure complaint that we are prepared to file but my client is willing to hold off on filing the complaint if a new loan can be closed by July 1, 2016" and set a June 17, 2016 deadline. On June 17, 2016, Quinn responded with modifications, to which Oyadomari was "not agreeable[.]" Oyadomari then proposed new terms that would expire at 4:30 p.m. on Friday, June 24, 2016. The correspondence provided by Quinn did not reflect a response.

**B.    Procedural Background**

**1.    The Complaint**

On November 29, 2016, Oyadomari filed her complaint for foreclosure in the circuit court against Defendants. Oyadomari contended Defendants were in "material default under the terms of the Note and the Mortgage[,]" therefore she was "entitled to foreclose upon the Mortgage and the subject property and to obtain a deficiency judgment, if appropriate, against Defendants."

**2.    Oyadomari's Motion for Summary Judgment and Interlocutory Decree of Foreclosure**

On February 15, 2017, Oyadomari filed a motion for summary judgment and interlocutory decree of foreclosure. In her memorandum in support of the motion, Oyadomari stated she was entitled to summary judgment on her foreclosure claim

5

because she established the four material factual elements outlined in Bank of Honolulu v. Anderson, 3 Haw. App. 545, 550, 551, 654 P.2d 1370, 1374, 1375 (1982) (explaining that a party moving for summary judgment on a foreclosure claim must prove these material facts to prevail: "(1) the existence of the Agreement, (2) the terms of the Agreement, (3) default by [the mortgagor or debtor] under the terms of the Agreement, and (4) the giving of" requisite notice).

On April 19, 2017, the circuit court entered its "Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Interlocutory Decree of Foreclosure." The circuit court concluded:

> 3. Plaintiff provided sufficient evidence of the existence and terms of the Note and Mortgage.
>
> 4. Defendants' failure to pay the amounts owed under the Note in accordance with the terms of the Note constitutes a material default under the Note and Mortgage.
>
> 5. Plaintiff gave the requisite notice to Defendants of their default and despite such notice, Defendants failed to pay the amounts owed to Plaintiff.
>
> 6. As a result of Defendants' material default under the Note and Mortgage, Plaintiff is entitled to foreclose upon the property secured and encumbered by the Mortgage.

The circuit court also appointed a commissioner to conduct the sale and entered its judgment.

HQHQ and Quinn did not appeal from this April 19, 2017 order and judgment.

### 3. Oyadomari's Motion to Confirm Sale

The foreclosure sale was held on July 17, 2017, and Oyadomari entered the final and highest bid of $375,100.00. Oyadomari then moved to confirm the sale. Oyadomari also requested: "to satisfy the purchase price by way of an offset of the amount of her secured debt in the event that [she] is the confirmed purchaser of the subject property"; direct the commissioner to convey the property via quitclaim deed to the confirmed purchaser; award the commissioner fees and expenses as determined by the circuit court; and discharge the commissioner once the sale was complete. In addition, Oyadomari sought a writ of possession or ejectment.

### 4. Quinn's Motion to Compel Oyadomari to Accept Full Payment

On October 9, 2017, over five months after the circuit court granted Oyadomari's motion for summary judgment and interlocutory decree of foreclosure, Quinn moved to compel Oyadomari to accept full payment, relying on Hawai'i Rules of Civil Procedure (**HRCP**) Rules 60(b)(2), (b)(5), and (b)(6), and the court's powers of equity. Quinn requested "an order compelling [Oyadomari] to accept full payment for the June 20, 2008 Promissory Note, and all other orders necessary to allow [Quinn] to close the $250,000 loan approved by First Hawaiian Bank."

7

In the memorandum supporting his motion to compel Oyadomari to accept full payment, Quinn contended he had a "right to redeem" and that his "legal obligation to pay [Oyadomari] includes the reciprocal legal right to receive the benefit of the bargain." Relying on HRCP Rules 60(b)(2), (b)(5), and (b)(6), Quinn maintained that when he would be able to pay Oyadomari "the full amount due under the June 20, 2008 Promissory Note it" would "no longer [be] equitable to proceed with the foreclosure sale of the property." Quinn stated he believed Oyadomari was trying to foreclose on the property because it would provide access to the main road from her parcel, thus making development of the land "much more valuable[.]" Quinn also believed this was the same reason "why [Oyadomari] opposed being paid in full."

### 5. October 13, 2017 Order

At the October 11, 2017 hearing, the circuit court considered Quinn's motion to compel Oyadomari to accept full payment. Quinn argued the court had the authority to compel Oyadomari to accept the payment because "the law is clear as far as the Court's broad discretion sitting in equity to grant the relief" and per HRCP Rule 60(b)(5), where "it is no longer equitable . . . that [a] judgment" should apply prospectively, the court has authority to grant relief as requested.

8

Oyadomari opposed the motion because she did not believe the court had the authority to compel her to accept Quinn's "settlement offer[.]" She also argued that she was exercising her statutorily and contractually based remedies, and maintained that Quinn's arguments at this hearing, instead, should have been made in opposition to her motion for summary judgment. Oyadomari stated there was no authority at the time of this hearing, "to say that pursuant to contract law the defendants have the right to redeem or force" acceptance of the "settlement offer."

Regarding Oyadomari's motion to confirm the sale, Quinn and HQHQ requested the commissioner take additional bids, and then requested the court modify the bidding procedure by allowing a subsequent bid to be three percent over the prior bid instead of the normal procedure of five percent over the prior bid.[3] The circuit court allowed both parties to re-bid on the property at the hearing. Oyadomari entered the prevailing bid of $413,547.75.

On October 13, 2017, the circuit court entered an order denying Quinn's motion to compel Oyadomari to accept full payment and granting Oyadomari's motion to confirm the sale.

---

[3] Under Hawai'i Probate Rules Rule 70(b), in a sale of real property, "[i]f an initial bid has been offered and accepted, a further overbid from any person shall be permitted at least five percent greater than the initial acceptable bid."

### 6. Quinn's Motion for Reconsideration

Quinn moved for reconsideration of the October 13, 2017 order, again relying on HRCP Rules 60(b)(2), 60(b)(5) and 60(b)(6). In his motion for reconsideration, Quinn claimed denying his motion to compel Oyadomari to accept full payment and granting Oyadomari's motion to confirm the sale "without explanation is erroneous as a matter of law."

On November 24, 2017, the circuit court denied Quinn's motion for reconsideration.[4] The circuit court found that the motion for reconsideration failed "to present any new evidence or arguments that could not have been presented prior" and noted a motion for reconsideration "should be more than a forum to express dissatisfaction with the Court's Order."

### 7. The November 28, 2017 Orders and Judgment

On November 28, 2017, the circuit court again granted Oyadomari's motion to confirm the sale. In its findings of fact, the circuit court found that the tax assessed value of the property was $237,800.00 and Oyadomari's bid of $413,547.75 "significantly exceeds" the property's value. In its conclusions of law, the circuit court concluded Oyadomari's bid for the property was "fair and equitable"; the commissioner's fees and expenses were fair, reasonable, and necessarily

---

[4] Also in this order, the circuit court denied a motion for leave to file a counterclaim and crossclaim filed by Quinn on October 10, 2017.

10

incurred; and Oyadomari's requested attorney's fees and costs were fair, reasonable, and necessarily incurred. The circuit court entered a judgment "pursuant to [HRCP Rule 54(b)] as there is no just reason for delay."

That same day, the circuit court issued a writ of possession. The writ stated that Oyadomari was "entitled to possession of the subject property and a writ of ejectment against Defendants" and commanded the sheriff to remove Defendants, "and all persons holding by, through or under said defendants."

The circuit court also entered a second order denying Quinn's motion to compel Oyadomari to accept full payment.

8. **Oyadomari's Motion to Alter or Amend the Confirmation of Sale**

Oyadomari moved to alter or amend the November 28, 2017 order granting her motion to confirm the sale. Oyadomari asked the court to award her additional attorney's fees and costs, allow her to offset all the awarded fees and costs against the property's confirmed purchase price, and withhold "distribution of any excess sale proceeds pending" her "execution and enforcement of the Writ of Possession[.]"

Quinn filed both a memorandum in opposition and a motion to strike Oyadomari's motion to alter or amend the November 28, 2017 order granting her motion to confirm the sale.

The circuit court granted Oyadomari's motion and denied Quinn's motion.

HQHQ and Quinn filed a notice of appeal on December 28, 2017.

## II.  DISCUSSION

HQHQ and Quinn raise two points of error, alleging (1) the circuit court erred in failing to grant relief from the interlocutory decree of foreclosure and (2) all orders entered after the October 13, 2017 order require reversal.  We affirm.

## A.    The Circuit Court Did Not Abuse its Discretion in Denying Quinn's Motions for Relief

In their first point of error, HQHQ and Quinn argue that the circuit court "committed grave error by failing to grant relief from the interlocutory decree of foreclosure where it is no longer equitable that the judgment should have prospective application," asserting:

> Where (1) [Oyadomari] would be paid in full, (2) Mr. Quinn had a commercial loan commitment from First Hawaiian Bank for $250,000.00 to be applied to paying [Oyadomari] in full, (3) the court would hold a hearing to determine the full amount to be paid to [Oyadomari], and (4) a court ordered escrow account would ensure [Oyadomari] was paid in full, the trial court committed grave error by failing to grant relief from the interlocutory decree of foreclosure where it is no longer equitable that the judgment should have prospective application.

(Formatting altered.)

We again note that HQHQ and Quinn did not appeal from the April 19, 2017 order granting Oyadomari's motion for summary judgment and interlocutory decree of foreclosure or the related judgment and, thus, waived any appeal from that order or judgment. Quinn instead attacked the order and judgment through his October 9, 2017 motion to compel Oyadomari to accept full payment and his November 2, 2017 motion for reconsideration, relying on HRCP Rules 60(b)(2), (b)(5), and (b)(6).

On appeal, again relying on HRCP Rules 60(b)(2), (b)(5), and (b)(6), HQHQ and Quinn argue that "[a]ll of the equities establish that the interlocutory decree of foreclosure no longer has prospective application." HQHQ and Quinn further argue that when Oyadomari "will receive full payment the result [will be] the same as . . . when a judgment is paid" thereby relieving her of the "obligation to pay Defendant[s] the amount in excess of the debt she is owed under the promissory note."

HRCP Rule 60(b) provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> . . . .
>
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer

13

> equitable that the judgment should have prospective
> application; or
>
> (6) any other reason justifying relief from the operation
> of the judgment.

(Formatting altered.)

The circuit court's rulings on a motion based on HRCP Rules 60(b)(2), (b)(5), and/or (b)(6) are reviewed for abuse of discretion. See Beneficial Hawaii, Inc. v. Casey, 98 Hawai'i 159, 164, 45 P.3d 359, 364 (2002); Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992) (explaining abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant").

"Furthermore, the burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it." Ek v. Boggs, 102 Hawai'i 289, 294-95, 75 P.3d 1180, 1185-86 (2003) (citation, internal quotation marks, and brackets omitted).

### 1. HRCP Rule 60(b)(2)

First, HRCP Rule 60(b)(2) may provide relief if the evidence was (1) "previously undiscovered even though due diligence was exercised;" (2) "admissible and credible;" and (3) "of such material and controlling nature as will probably change the outcome and not merely cumulative or [t]ending only

to impeach or contradict a witness." Omerod v. Heirs of Kaheananui, 116 Hawaiʻi 239, 277, 172 P.3d 983, 1021 (2007) (citation and emphasis omitted).

HQHQ and Quinn rely on "a commercial loan commitment from First Hawaiian Bank for $250,000.00 to be applied to paying [Oyadomari] in full," which was dated October 5, 2017.

Unchallenged findings show that (1) "[p]ursuant to the terms of the Note, all amounts owed under the Note were due and payable on June 6, 2015"; (2) as of June 6, 2015, HQHQ and Quinn owed $312,305.73; (3) HQHQ and Quinn failed to pay the amount owed by June 6, 2015; and (4) Oyadomari filed a complaint to foreclose on November 29, 2016. The record shows that the circuit court granted Oyadomari's motion for summary judgment and interlocutory decree of foreclosure, and entered its judgment, on April 19, 2017.

Dated October 5, 2017, the First Hawaiian Bank loan commitment was created over two years after the Note was due and, thus, was not previously undiscovered evidence. Further, the loan commitment was for $250,000.00 while the amount due on June 6, 2015 was $312,305.73.[5] Thus, nothing in the First Hawaiian Bank loan commitment changes the default on the Note or is "of such material and controlling nature as will probably

---

[5] Quinn asserted that "[w]ith the $250,000 First Hawaiian Bank loan and his additional liquid assets [he] can pay" the full amount owed under the Note. Quinn, however, did not elaborate on his additional liquid assets.

change the outcome." See generally, Omerod, 116 Hawai'i at 277, 172 P.3d at 1021.

### 2. HRCP Rule 60(b)(5)

Next, "HRCP Rule 60(b)(5) is based on the historic power of a court of equity to modify its decree in the light of changed circumstances." In re Hawaiian Elec. Co., 149 Hawai'i 343, 362, 489 P.3d 1255, 1274 (2021) (citation omitted). HRCP Rule 60(b)(5) "is not a substitute for an appeal" but "refers to 'some change in conditions that makes continued enforcement inequitable.'" Id. "The burden is on the movant to 'demonstrate extraordinary circumstances justifying relief.'" Id.

The only circumstance that changed after the default of the Note was the First Hawaiian Bank loan commitment for $250,000.00. But that loan commitment was offered over two years after the Note was due, over ten months after the complaint to foreclose was filed, over five months after the court granted Oyadomari's motion for summary judgment and interlocutory decree of foreclosure, and did not cover the amount owed on the Note. Untimely and insufficient alternative financing was not an extraordinary circumstance justifying relief from the interlocutory decree of foreclosure and the related judgment.

3.    **HRCP Rule 60(b)(6)**

Finally, under HRCP Rule 60(b)(6), "the movant must show that (1) the motion is based on some reason other than those specifically stated in clauses 60(b)(1) through (5); (2) the reason urged is such as to justify the relief; and (3) the motion is made within a reasonable time." Cvitanovich-Dubie v. Dubie, 125 Hawai'i 128, 144, 254 P.3d 439, 455 (2011) (citation and emphasis omitted). "A party seeking relief under HRCP Rule 60(b)(6) after the time of appeal has run must establish the existence of 'extraordinary circumstances' that prevented or rendered him unable to prosecute an appeal." Hawai'i Hous. Auth. v. Uyehara, 77 Hawai'i 144, 148-49, 883 P.2d 65, 69-70 (1994) (citation omitted).

Again, the unchallenged findings show HQHQ and Quinn failed to pay the $312,305.73 owed by June 6, 2015, and they did not appeal the April 19, 2017 order granting the motion for summary judgment and interlocutory decree of foreclosure, and judgment. As they do in their HRCP Rules 60(b)(2) and (b)(5) arguments, HQHQ and Quinn rely on the First Hawaiian Bank loan commitment to say Quinn can now afford to pay off the loan. However, obtaining financing over two years after the default, over ten months after the complaint to foreclose was filed, and over five months after the order granting summary judgment and interlocutory decree of foreclosure, did not establish

17

extraordinary circumstances that rendered HQHQ and Quinn unable to prosecute an appeal and did not justify relief from the interlocutory decree of foreclosure and related judgment.

Based on the record before us, HQHQ and Quinn did not meet their burden of showing there was newly discovered evidence, the judgment was no longer equitable, or any other reason justifying relief. See generally, HRCP Rule 60(b); Ek v. Boggs, 102 Hawaiʻi at 294-95, 75 P.3d at 1185-86. Thus, we cannot say that the circuit court abused its discretion in its October 13, 2017 order by, as HQHQ and Quinn phrase the issue, "failing to grant relief from the interlocutory decree of foreclosure" based on HRCP Rule 60(b). (Formatting altered.)

**B.   Challenge to Orders Subsequent to the October 13, 2017 Order is Waived**

In their second point of error, HQHQ and Quinn contend "[w]here the trial court committed grave error by entering the October 13, 2017 [Order], the reversal of the October 13, 2017 Order requires reversal of all subsequent Orders, Findings of Fact, Conclusions of Law and decisions[.]" (Formatting altered.) HQHQ and Quinn's entire argument consists of the following two sentences:

> "This point is procedural and straight forward. All of the court's actions after the October 13, 2017 Order must be set aside as they are based on an order that no longer exists."

Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7) requires an argument to "contain[] the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on. . . . Points not argued may be deemed waived." In addition, "[a]n appellate court need not address matters as to which the appellant has failed to present a discernible argument." Int'l Sav. & Loan Ass'n v. Carbonel, 93 Hawaiʻi 464, 473, 5 P.3d 454, 463 (2000).

HQHQ and Quinn provide no analysis, and cite no legal authority to support this point of error. In short, HQHQ and Quinn did not comply with HRAP Rule 28(b)(7) and did not present a discernible argument. We consider this argument waived.

In any event, as explained above, the circuit court did not err in entering its October 13, 2017 order. Therefore, HQHQ and Quinn's second point of error also lacks merit.

### III. CONCLUSION

For the above reasons, we affirm the Circuit Court of the Third Circuit's:

1. October 13, 2017 "Order Denying [Quinn's] Motion for Order Compelling [Oyadomari] to Accept Full Payment of the June 20, 2008 Promissory Note, Filed on October 9, 2017 and Granting

19

[Oyadomari's] Motion to Confirm Sale, Filed on July 31, 2017";

2. November 24, 2017 "Order Denying Motion for Leave to File [Quinn's] Counterclaim and Crossclaim, Filed on October 10, 2017 and Motion for Reconsideration of October 13, 2017 Ruling Denying [Quinn's] Motion for Order Compelling [Oyadomari] to Accept Full Payment of June 20, 2008 Promissory Note (And Objection to Plaintiff's Notice of Submission Dated October 24, 2017[ )], Filed on November 2, 2017";

3. November 28, 2017 "Order Denying [Quinn's] Motion for Order Compelling [Oyadomari] to Accept Full Payment of the June 20, 2008 Promissory Note";

4. November 28, 2017 "Findings of Fact, Conclusions of Law and Order Granting [Oyadomari's] Motion to Confirm Sale";

5. November 28, 2017 Writ of Possession;

6. November 28, 2017 Judgment;

7. January 24, 2018 "Order Granting [Oyadomari's] Motion to Alter or Amend Findings of Fact, Conclusions of Law and Order Granting [Oyadomari's] Motion to Confirm Sale Filed November 28, 2017";

8.  January 24, 2018 "Order Denying [Quinn's] Motion to Strike [Oyadomari's] Motion to Alter or Amend Findings of Fact, Conclusions of Law and Order Granting [Oyadomari's] Motion to Confirm Sale Filed November 28, 2017"; and

9.  January 24, 2018 Amended Judgment.

(Some formatting altered.)

DATED:  Honolulu, Hawaiʻi, June 21, 2023.

On the briefs:

Andrew S. Iwashita,
for Defendant-Appellant
William S. Quinn.

Edmund W.K. Haitsuka,
Danielle N. Degele-Mathews,
for Plaintiff-Appellee
Sharman M. Oyadomari, Trustee
of the Kikuko Kuwahara
Irrevocable Grantor Trust
dated April 26, 2013.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge