Electronically Filed
Supreme Court
SCWC-16-0000435
28-MAY-2021
11:43 AM
Dkt. 18 OP

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

WELLS FARGO BANK, N.A., dba AMERICAS SERVICING COMPANY,
Respondent/Plaintiff-Appellee,

vs.

MARIANNE S. FONG, Individually and as Trustee of the
Marianne S. Fong Revocable Trust Dated October 16, 2003,
Petitioner/Defendant-Appellant,

and

ONOMEA BAY RANCH OWNER'S ASSOCIATION, INC.,
Defendant.

_____

SCWC-16-0000435

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000435; CIV. NO. 10-1-0097)

MAY 28, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

A bank seeking to foreclose on a mortgage and note bears the burden of establishing that the borrower defaulted under the terms of the agreements. In order to satisfy this burden and prevail on a motion for summary judgment, the bank must submit evidence which clearly demonstrates the borrower's default.

Wells Fargo Bank, N.A. (Wells Fargo or Lender) sought a judicial foreclosure of the residence of Marianne S. Fong (Fong or Borrower). In order to prove that Fong had defaulted, Wells Fargo submitted a ledger without explaining how to read the ledger. In the absence of any explanation, the ledger is ambiguous and presents genuine issues of material fact. Furthermore, although the ledger indicates that Wells Fargo billed Fong for lender-placed insurance, there is only ambiguous evidence regarding whether Wells Fargo properly charged Fong for the insurance. Thus, there is also a genuine issue of material fact concerning whether Fong actually owed the amounts that forced her into the alleged default. The Intermediate Court of Appeals (ICA) consequently erred in affirming the Circuit Court of the Third Circuit's (circuit court) order granting summary judgment.

This court therefore vacates the ICA's judgment of February 12, 2020 and remands this case for further proceedings consistent with this opinion.

## I.    Background

### A.    Factual Background

On March 12, 2007, Fong executed a promissory note (Note) for $570,000 to MortgageIT, Inc. secured by a mortgage (Mortgage) on her home in Pepe'ekeo on the island of Hawai'i. Wells Fargo ultimately obtained the Note from MortgageIt, Inc., and was also assigned the Mortgage.

#### 1.    The Note

The Note obligated Fong to make "monthly payments" for thirty years beginning in May 2007.  Under the terms of the Note, Fong was required to pay $3,087.50 per month for the first ten years, followed by $4,249.77 per month for the latter twenty years.

The Note further provided that Fong would be in default if she "d[id] not pay the full amount of each monthly payment on the date it is due."  In the event that Fong defaulted on her payments, the Note included an acceleration clause authorizing Wells Fargo to seek the full amount owed under the Note.

#### 2.    The Mortgage

In conjunction with the terms of the Note, the Mortgage obligated Fong to make "periodic payments" consisting of the monthly payments required by the Note, any additional charges required by the Note, and escrow items.  As relevant

here, "escrow items" included "premiums for any and all insurance required by [Wells Fargo] under Section 5."

Under Section 5 of the Mortgage, Fong was required to insure the property "against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance." If Fong failed to purchase and maintain the required insurance, the Mortgage authorized Wells Fargo to "obtain insurance coverage, at [Wells Fargo's] option and [Fong's] expense." "Any amounts disbursed by [Wells Fargo] . . . shall become additional debt of [Fong] secured by this [Mortgage]. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from [Wells Fargo] to [Fong] requesting payment."

Lastly, Section 1 of the Mortgage also authorized Wells Fargo to "return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." If Fong was up to date on her payments, the Mortgage provided that her payments "shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [for Escrow Items]." However, if Fong was delinquent, the Mortgage provided that a "payment may be applied to the

4

delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full."

### 3.    Loan History

Between July 2007 and February 2009, Fong regularly made payments exceeding $3,087.50 to Wells Fargo for each month's payment.[1]

At some time prior to September 10, 2007, Wells Fargo apparently determined that Fong did not obtain hail and windstorm (hurricane) insurance for the mortgaged property, as required under Section 5 of the Mortgage.[2]  On October 18, 2007, Wells Fargo purchased lender-placed hurricane insurance at the price of $13,067.20 for the time period from July 31, 2007 to July 31, 2008.  On August 1, 2008, Wells Fargo purchased a second year's worth of lender-placed hurricane insurance for

---

[1]    It appears that Fong may have missed payments in January, October, and December 2008.  Nevertheless, in months where there is no "Amount Received," it seems that additional payments were made in the immediately following months that could have cured any resulting default.

[2]    The record is devoid of any document explicitly indicating that the Mortgage required windstorm and hail insurance.  However, this court notes that an extended coverage endorsement generally covers damage from "windstorm, hail, explosion (except of steam boilers), riot, civil commotion, aircraft, vehicles, and smoke."  See Extended Coverage (EC) Endorsement, International Risk Management Institute, Inc., https://www.irmi.com/term/insurance-definitions/extended-coverage-endorsement (last visited Apr. 27, 2021).  Here, Section 5 of the Mortgage required Fong to insure the property against "hazards included within the term 'extended coverage[.]'"

$13,067.20 for the time period from July 31, 2008 to July 31, 2009. It is not clear from the record whether Wells Fargo notified Fong prior to either purchase that Wells Fargo would purchase and charge Fong for the cost of hurricane insurance if she failed to obtain a policy.

On July 26, 2009, Wells Fargo mailed Fong a letter asserting that she was in default (Default Letter). The Default Letter stated that Fong owed Wells Fargo $22,763.16 in past due payments, and that there was a total delinquency of $22,932.53. The Default Letter notified Fong that if she did not make her payments current by August 25, 2009, Wells Fargo would accelerate the Mortgage and potentially foreclose on the property.

It appears that Fong stopped making consistent payments after receiving the Default Letter.

B. **Procedural Background**

On March 23, 2010, Wells Fargo filed a complaint seeking foreclosure in circuit court.[3]

Over five years later,[4] Wells Fargo filed the Motion at issue on October 27, 2015. Wells Fargo contended that it was

---

[3]   The Honorable Greg K. Nakamura presided.

[4]   At Fong's request, the circuit court placed the case into the Foreclosure Mediation Pilot Project. Although mediation was initially
(continued . . .)

entitled to foreclosure because its evidence demonstrated (1) the existence of the Mortgage and Note; (2) the terms of the Mortgage and Note; (3) that Fong defaulted under the terms of the Mortgage and Note; and (4) that it provided Fong with the requisite notice of foreclosure. As evidence of Fong's purported default under the terms of the Mortgage and Note, Wells Fargo submitted a loan account history (Loan History).[5]

On November 23, 2015, Fong filed a pro se response (Response) to Wells Fargo's Motion. In a two-page memorandum, Fong asserted that she was not in default. Instead, Fong stated that she attempted to make payments, but Wells Fargo returned her payments. Fong also indicated that any alleged default was caused by Wells Fargo's imposition of lender-placed hurricane insurance without providing Fong notice. Fong attached several

_____

(. . . continued)

scheduled for November 12, 2010, Wells Fargo requested multiple continuations until May 2014. The parties were not able to reach an agreement, and the circuit court discharged the case from the Foreclosure Mediation Pilot Project on February 13, 2015.

Wells Fargo then filed a motion for summary judgment on May 26, 2015, which was struck due to Wells Fargo's failure to file a certificate of service with its Hawai'i Revised Statutes (HRS) § 667-17 Attorney Affirmation.

[5]    Wells Fargo's attachments to its Motion consisted of a declaration of indebtedness signed by April J. Linn, a declaration by Robert M. Ehrhorn, Jr., an HRS § 667-17 Affirmation, the Note, the Mortgage, the mortgage assignment from MortgageIt, Inc. to Wells Fargo, the Default Letter, the Loan History, a judgment worksheet, a litigation guarantee and endorsement, a quitclaim deed conveying the property from Fong to a personal trust, a collection letter, and a document showing Fong was not an active service member.

7

documents to her Response to support her claims. However, Fong did not include a declaration or affidavit attesting to her claims or certifying her documents.

On December 7, 2015, Wells Fargo asserted in its reply that it had established Fong's default through the Loan History. However, Wells Fargo did not explain how the Loan History showed Fong's default. Wells Fargo also argued that the Note "allow[ed Wells Fargo] the right to accelerate and require payment of the full amount of Principal which has not been paid and all the interest that is owed on that amount. Any payment of less than the full amount due does not have to be accepted and refunded [sic]."

On December 10, 2015, Fong submitted an "Addendum to Memorandum in Opposition to Motion for Summary Judgment filed on November 23, 2015" (Addendum). In the Addendum, Fong reiterated her claims from her Response. Fong also stated that she obtained her own hurricane insurance policy at an approximate rate of $557.00 per year, as opposed to Wells Fargo's $13,067.20 per year policy.

On December 17, 2015, the circuit court held a hearing on Wells Fargo's Motion. During the hearing, the circuit court stated it would grant Wells Fargo's Motion.

On May 2, 2016, the circuit court entered its "Findings of Fact, Conclusions of Law and Order Granting

Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against all Defendants on Complaint filed March 23, 2010" (Order). The circuit court found that Wells Fargo established the four elements required by Bank of Honolulu v. Anderson, 3 Haw. App. 545, 551, 654 P.2d 1370, 1375 (1982), and was entitled to foreclosure. In particular, the circuit court found that, as an "undisputed fact[],"

> Defendant MARIANNE S. FONG defaulted in the observance and performance of the terms, covenants and conditions set forth in the Note and Mortgage in that said Defendant failed and neglected to pay the principal sum thereof and the interest thereon at the times and in the manner therein provided, and failed and neglected to pay the additional Mortgage expenses, advances and charges incurred or made pursuant to the terms and conditions of the Mortgage.

However, beyond stating that it "reviewed the pleadings, declarations and the files and records herein," the circuit court did not address Fong's arguments that she was not in default because Wells Fargo rejected her payments and because Wells Fargo improperly charged her for lender-placed hurricane insurance. The circuit court entered its judgment the same day.

Before the ICA, Fong asserted that the circuit court erred in granting Wells Fargo's Motion because Fong presented genuine issues of material fact, namely whether (1) Fong actually was in default; (2) the lender-placed hurricane insurance violated Section 5 of the Mortgage, including whether (a) Wells Fargo should have provided notice before purchasing the insurance, (b) Wells Fargo provided such notice, and

9

(c) Wells Fargo could back date the coverage; (3) Wells Fargo properly increased Fong's mortgage payments; (4) Wells Fargo misapplied Fong's payments under Section 2 of the Mortgage; and (5) the doctrine of unclean hands should have prevented Wells Fargo from foreclosing on the Mortgage.

In a summary disposition order, the ICA determined that Wells Fargo satisfied its burden of production such that Fong bore the burden of demonstrating the existence of a genuine issue of material fact. The ICA acknowledged Fong's arguments that "she did not default under the Mortgage and Note and that the reason for her alleged default was the increase in cost from the lender-placed hurricane insurance, which she claims she was unaware of at the time." However, the ICA rejected Fong's assertions because "the record is devoid of any accompanying declaration or affidavit to support Fong's allegations or her submitted exhibits." The ICA consequently affirmed the circuit court's judgment.

## II.  Standard of Review

### A.  Motion for Summary Judgment

A trial court's decision on a motion for summary judgment is reviewed de novo. Thomas v. Kidani, 126 Hawaiʻi 125, 127-28, 267 P.3d 1230, 1232-33 (2011) (citing Fujimoto v. Au, 95 Hawaiʻi 116, 136, 19 P.3d 699, 719 (2001)).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

Fujimoto, 95 Hawaiʻi at 136, 19 P.3d at 719.

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law.

French v. Hawaii Pizza Hut, Inc., 105 Hawaiʻi 462, 470, 99 P.3d 1046, 1054 (2004) (quoting GECC Fin. Corp. v. Jaffarian, 79 Hawaiʻi 516, 521, 904 P.2d 530, 535 (App. 1995)).

This court reviews the evidence in the light most favorable to the party opposing the motion for summary judgment. Thomas, 126 Hawaiʻi at 128, 267 P.3d at 1233. When a movant's evidence is subject to conflicting interpretations, or reasonable people might differ as to its significance, summary judgment is improper. Nationstar Mortgage LLC v. Kanahele, 144 Hawaiʻi 394, 401-02, 443 P.3d 86, 93-94 (2019) (quoting Makila Land Co., LLC v. Kapu, 114 Hawaiʻi 56, 67, 156 P.3d 482, 493 (App. 2006)).

### III. Discussion

**A.  The ICA erred in affirming the circuit court's order granting summary judgment because the Loan History is subject to interpretation and therefore a genuine issue of material fact exists.**

A party seeking to foreclose on a mortgage and note must prove (1) the existence of the agreements, (2) the terms of

11

the agreements, (3) a default under the terms of the agreements, and (4) delivery of the notice of default. Bank of America, N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 367, 390 P.3d 1248, 1254 (2017) (citing Anderson, 3 Haw. App. at 551, 654 P.2d at 1375).

The parties dispute whether Wells Fargo established that Fong had defaulted under the terms of the agreements. Pursuant to the terms of the Note, Fong would be in default "[i]f [Fong] do[es] not pay the full amount of each monthly payment on the date it is due[.]"  The Mortgage does not include any relevant modifications to the Note's definition of default.[6] Wells Fargo insists that Fong defaulted because she "failed to make the payments required under the Note and Mortgage, and failed to pay the additional Mortgage expenses, advances, and charges that were incurred under the terms of the Mortgage."  To support this argument, Wells Fargo pointed out that the Loan History shows that the loan was due for the February 1, 2009 payment.  By contrast, Fong argued that she did not default because she made all payments required by the Note.

Under the circumstances, the Loan History actually presents conflicting evidence regarding Fong's payment status,

---

[6]    The Mortgage adds that default may occur if either (1) Fong, or Fong's agent(s), "gave materially false, misleading, or inaccurate information or statements to Lender . . . in connection with the Loan," or (2) any civil or criminal action that could result in forfeiture of the property is begun.

12

rendering summary judgment inappropriate.  First, the Loan History appears to indicate that Fong made her monthly payments through February 2009, the alleged default date.  During the time frame relevant to these proceedings, the Note obligated Fong to make monthly payments of $3,087.50.  The Loan History seems to show that Fong made payments exceeding $3,087.50 for every month between July 2007 and February 2009.[7]  Thus, it is not clear that Fong defaulted by failing to make the $3,087.50 payments required by the Note between July 2007 and February 2009.

Second, the Loan History is largely silent on the amount the Mortgage obligated Fong to pay, and thus it is unclear whether Fong actually failed to make Mortgage payments between the execution of the Mortgage and February 2009.  The Mortgage required Fong to make periodic payments consisting of, inter alia, the monthly payments due under the Note as well as payments for escrow items.  In comparison to the Mortgage's silence on the specific amounts required to satisfy each periodic payment, the Loan History only seems to identify the periodic payments due for January 1, 2008; November 1, 2008; and

---

[7]     To the extent the Loan History shows that there is no "Amount Received" for January, October, and December 2008, the Loan History also seems to indicate that Fong may have cured those defaults by submitting additional payments in the immediately following months.

13

February 1, 2009.  Despite this ambiguity, the Loan History appears to indicate that Fong made payments to satisfy the periodic payments due between July 2007 and February 2009, including the ones identified by the Loan History.

To the extent Wells Fargo argues that it was entitled to reject or redirect Fong's payments, this argument assumes what Wells Fargo must prove – that Fong had actually defaulted. Wells Fargo claimed on appeal that it can reject or redirect any payment merely because it was less than the amount purportedly due.  However, the terms of the Mortgage only permit Wells Fargo to reject or redirect payments that are "insufficient to bring the Loan current."  Thus, in order to exercise this authority, Wells Fargo must first establish that Fong was not current on her payments.  But as previously discussed, the Loan History does not unambiguously show that Fong failed to make the payments required by the Note or Mortgage such that she was not current on her payments by February 1, 2009.

In light of the foregoing, the Loan History is subject to interpretation and does not necessarily demonstrate that Fong defaulted under the terms of the Note and Mortgage.  Thus, there is a genuine issue of material fact regarding whether Fong defaulted.  Wells Fargo consequently was not entitled to summary judgment.  Fujimoto, 95 Hawaiʻi at 136, 19 P.3d at 719; see also

14

Reyes-Toledo, 139 Hawai'i at 367, 390 P.3d at 1254; Kanahele, 144 Hawai'i at 401-02, 443 P.3d at 93-94.

As the party seeking summary judgment, Wells Fargo bore the burden of proof to establish all necessary elements. French, 105 Hawai'i at 470, 99 P.3d at 1054. Consequently, Wells Fargo should have provided sufficient information for the courts to parse its ambiguous ledger. Going forward, Wells Fargo must at least submit evidence identifying how much Fong was required to pay under the terms of the Mortgage and that Fong failed to make the requisite payments. Wells Fargo may use this evidence to demonstrate that Fong was not current on her loan such that the Mortgage authorized Wells Fargo to reject or redirect Fong's payments. To the extent this information is contained within the Loan History, Wells Fargo may alternatively submit an affidavit or declaration explaining how to interpret the data contained therein.

**B. The ICA erred in affirming the circuit court's order granting summary judgment because additional evidence is needed to support the Loan History's purported amounts due, creating a genuine issue of material fact.**

Fong additionally argues that she did not default, but rather that Wells Fargo improperly forced her into default by improperly charging her for lender-placed hurricane insurance. Wells Fargo simply responds that the Mortgage "expressly allowed for lender-place [sic] insurance" and that "Fong did not dispute

15

that she did not have hurricane coverage as required under the Mortgage." Wells Fargo's post hoc argument is unavailing.

When adjudicating a motion for summary judgment, trial courts must "carefully scrutinize the materials submitted by the moving party[.]" See Miller v. Manuel, 9 Haw. App. 56, 66, 828 P.2d 286, 292 (App. 1991).

Wells Fargo's Motion filings raised significant questions regarding the validity of the purported amounts due. The Loan History indicates that on October 18, 2007, Wells Fargo issued a check in the amount of $13,067.20 to "WNCWD." The Loan History also shows that Wells Fargo issued a second check for the same amount to "WNCWD" on August 1, 2008. However, none of Wells Fargo's Motion filings explained what these two checks were for. Instead, it was Fong who pointed out that the two payments were for lender-placed hurricane insurance. In identifying the payments, Fong asserted that Wells Fargo purchased and billed Fong for the lender-placed insurance without notice. Wells Fargo did not reply to Fong's lack of notice assertion during the Motion proceedings.

Again, as the party seeking summary judgment, Wells Fargo bore the burden of proving that Fong had defaulted under the terms of the Note and Mortgage. French, 105 Hawai'i at 470, 99 P.3d at 1054. Wells Fargo was therefore responsible for showing that Fong defaulted by failing to make all payments

16

required by the Note and Mortgage.  French, 105 Hawai'i at 470, 99 P.3d at 1054; Reyes-Toledo, 139 Hawai'i at 367, 390 P.3d at 1254;  By submitting only the Loan History, Wells Fargo skipped the step of proving that it was entitled to all the payments it claimed were due – and which led to Fong's alleged default when Wells Fargo redirected her payments.  In the absence of any explanation, Wells Fargo's implication that it was entitled to charge Fong for the cost of these two checks is suspect.

Even if Wells Fargo had explained during the Motion proceedings that the payments were for lender-placed insurance,[8] none of Wells Fargo's submissions demonstrated that Wells Fargo properly charged Fong for the lender-placed insurance.  On appeal, Wells Fargo countered that "[t]he Mortgage expressly allows for lender-placed insurance" and that "[t]he lender-placed insurance did not violate the Mortgage."  Wells Fargo is correct that under the terms of the Mortgage, "[i]f [Fong] fail[ed] to maintain any of the [required insurance coverages], [Wells Fargo] may obtain insurance coverage, at [Wells Fargo's] option and [Fong's] expense."  However, Wells Fargo disregards the Mortgage's limitation that the insurance cost "shall be

---

[8]    Although Wells Fargo acknowledged Fong's claim regarding the lender-placed insurance before the circuit court, Wells Fargo did not explain that these payments were for lender-placed hurricane insurance until it filed its answering brief to the ICA.

17

payable . . . upon notice from [Wells Fargo] to [Fong] requesting payment." (Emphasis added). Thus, unless Wells Fargo had provided notice requesting payment to Fong, the cost was not yet payable. However, Wells Fargo's filings were devoid of any evidence that it notified Fong before demanding payment.

To the extent Wells Fargo relies on Fong's submissions as evidence that Wells Fargo provided Fong notice before billing her for the lender-placed insurance, Fong's filings were ambiguous. In its ICA answering brief, Wells Fargo argued that Fong's evidence showed that she was given notice that Wells Fargo would purchase lender-placed insurance. However, Wells Fargo did not address whether such notice included notice that Wells Fargo would bill Fong for the lender-placed insurance. Nevertheless, the March 2009 letter on which Wells Fargo relied indicates both that Wells Fargo provided notice and that Fong did not receive notice before Wells Fargo billed Fong. Fong's filing therefore did not support Wells Fargo's claim.

As a part of identifying how much the Mortgage obligated Fong to pay, Wells Fargo bore the burden of establishing that it was entitled to the identified amount. French, 105 Hawai'i at 470, 99 P.3d at 1054; see also Reyes-Toledo, 139 Hawai'i at 367, 390 P.3d at 1254. Here, the only evidence in the record regarding whether Wells Fargo was entitled to charge Fong for the lender-placed insurance was

18

inconclusive. A genuine issue of material fact regarding whether Wells Fargo could charge Fong for the lender-placed insurance therefore remains. In turn, there is also a genuine issue of material fact regarding whether Fong defaulted when Wells Fargo apparently redirected her payments to cover the cost of lender-placed insurance.

### IV. CONCLUSION

For the foregoing reasons, the ICA erred in affirming the circuit court's May 2, 2016 Order when genuine issues of material fact remained.

Therefore, we vacate the ICA's February 12, 2020 judgment on appeal, which affirmed the circuit court's May 2, 2016 "Judgment on Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed March 23, 2010," and remand the case for further proceedings consistent with this opinion.

Al Thompson for
petitioner/defendant-appellant
Marianne S. Fong

Edmund K. Saffery
and Deirdre Marie-Iha
for respondent/plaintiff-
appellee Wells Fargo Bank, NA
dba Americas Servicing Company

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

