**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000621
28-MAR-2023
07:46 AM
Dkt. 69 MO**

NO. CAAP-17-0000621

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

THE BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE FOR
CERTIFICATE-HOLDERS CWABS ASSET-BACKED NOTES TRUST
2006-SD4, Plaintiff-Appellee,
v.
JOVEN D. BAUTISTA, COLLEEN BAUTISTA,
Defendants-Appellants,
and
JOHN DOES 1-20, JANE DOES 1-20, DOE CORPORATIONS 1-20,
DOE ENTITIES 1-20 AND DOE GOVERNMENTAL UNITS 1-20,
Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 15-1-0110)

MEMORANDUM OPINION
(By: Wadsworth, Presiding Judge, Nakasone and McCullen, JJ.)

Defendants-Appellants Joven D. Bautista and Colleen Bautista (**Bautistas**) appeal from the: (1) June 22, 2017 Order Denying without Prejudice Defendants' Motion to Compel (**Motion to Compel**) Plaintiff-Appellant The Bank of New York Mellon, as Indenture Trustee for Certificateholders CWABS Asset-Backed Notes Trust 2006-SD4's (**BONYM**) Responses to Defendants' First Request for Answers to Interrogatories, First Request for Production of Documents and Things, and First Request for Admissions to Plaintiff Filed March 28, 2017 (**Order Denying Motion to Compel**); (2) the August 2, 2017 Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment (**MSJ**) for

Foreclosure against All Defendants and for Interlocutory Decree of Foreclosure (**Foreclosure Decree**); and (3) the August 2, 2017 Judgment (**Foreclosure Judgment**), filed and entered by the Circuit Court of the Fifth Circuit (**Circuit Court**).

On appeal, the Bautistas contend that the Circuit Court: (1) erred by granting the MSJ by "erroneously conclud[ing] that there was no genuine question of material fact that [BONYM] was entitled to foreclos[ure]"; and (2) abused its discretion by "denying [the Bautistas'] motion to compel discovery because [the Bautistas] sought discovery of relevant evidence."

We hold that the Circuit Court (1) erred in granting summary judgment where the notices of default were inadmissible and thus raised a genuine issue of material fact as to BONYM's entitlement to foreclose; and (2) abused its discretion by denying the Bautistas' motion to compel discovery as to prior loan servicers.

## I. BACKGROUND

On July 28, 2015, BONYM filed a complaint for mortgage foreclosure (**Complaint**) against the Bautistas. The Complaint alleged, among other things, that: on August 4, 2006, the Bautistas executed a promissory note (**Note**) for $308,000.00 payable to Quick Loan Funding, payment of which was secured by a mortgage (**Mortgage**) (collectively, the **Loan**) on real property located at 3569 Makoa Street, Hanapēpē, Hawaiʻi 96716 (**Property**). The Complaint further alleged that on May 24, 2007, the Mortgage was assigned to Bank of New York as Trustee for the Noteholders CWABS Inc. Asset-Backed Notes, Series 2006-SD4006-SD4 (**BONY**), and on February 5, 2010, BONY assigned the Mortgage to BONYM; the Bautistas defaulted under the payment terms of the Loan; that following written notice to the Bautistas and their failure to cure the default, BONYM exercised its option to accelerate the Loan and declare the entire principal balance of the Mortgage and Note immediately due and payable; and that BONYM was entitled to foreclose the Mortgage and sell the Property.

On May 25, 2016, BONYM moved for summary judgment. BONYM's MSJ included a Declaration of Indebtedness and on Prior Business Records signed by Alvin Denmon (**Denmon**), "as an authorized representative of New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing" (**Shellpoint**), which became the servicing agent for BONYM on November 16, 2012. In the Declaration (**Denmon Declaration**), Denmon declared that:

2. [Shellpoint] maintains records for the loan in its capacity as [BONYM]'s servicer. As part of my job responsibilities for [Shellpoint], <u>I am familiar with the type of records maintained by [Shellpoint]</u> in connection with the Loan.

. . . .

4. The information in this Declaration is taken from [Shellpoint]'s business records. <u>I have personal knowledge of [Shellpoint]'s procedures for creating these records</u>. They are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of [Shellpoint]'s regularly conducted business activities; and (c) created by [Shellpoint] as a regular practice.

. . . .

13. [Shellpoint] became [BONYM]'s loan servicer for the Loan being foreclosed in this action on 11-16-12.

14. I have been in the mortgage loan servicing industry for 8 years. Based upon my occupational experience, I know that loan servicers follow an industry wide standard on how to keep and maintain business records on the loan services performed in their portfolio which recordkeeping is part of the regularly conducted activity of loan servicers. . . .

. . . .

21. <u>The prior loan servicer for this mortgage loan was Bank of America ("Prior Servicer")</u> [(**BOA**)].

22. Upon becoming [BONYM]'s loan servicer, [Shellpoint] took custody and control of loan documents and business records of [BOA] and <u>incorporated all such records into the business records of [Shellpoint]</u>.

23. Before [BOA]'s records were incorporated into [Shellpoint]'s own business records, it conducted an independent check into [BOA]'s records and found them in keeping with industry wide loan servicing standards and only integrated them into [Shellpoint]'s own business records after finding <u>[BOA]'s records were made as part of a regularly conducted activity, met industry standards and determined to be trustworthy</u>.

3

> 24.   In peforming its services to [BONYM], [Shellpoint] <u>relies upon the accuracy</u> of [BOA]'s records . . . .
>
> 25.   [BOA]'s records are <u>regularly used and relied upon</u> by [Shellpoint] . . . .
>
> . . . .
>
> 27. [Shellpoint] did review and determine [BOA]'s business records were trustworthy otherwise it would not have incorporated it into its own records[.]

(Emphases added).

On May 31, 2016, BONYM was served with the Bautistas' First Request for Answers to Interrogatories; First Request for Production of Documents and Things; and First Request for Admissions (**Discovery Requests**).

On September 6, 2016, the Bautistas filed an opposition to the MSJ, disputing:  (1) BONYM's entitlement to foreclose because BONYM failed to respond to discovery requests pertaining to the validity of a notice of default allegedly issued to the Bautistas by Countrywide Home Loans, Inc. (**Countrywide**), servicer of the Loan, on December 4, 2006 (**2006 Countrywide Default Notice**), and (2) whether BONYM had physical possession of the Note.

On September 9, 2016, BONYM filed a reply requesting a continuance of the hearing to respond to, *inter alia*, the Bautistas' Discovery Requests.  The hearing was continued to January 25, 2017.

On January 3, 2017, BONYM filed a Supplemental Declaration in support of its MSJ.  Tracy A. Sirmans (**Sirmans**), an employee of Shellpoint, signed the Declaration (**First Sirmans Declaration**), which stated:

> 2. . . . . I have personal knowledge of the facts and matters stated herein based on my review of the business records described below.
>
> . . . .
>
> 4.   In the regular performance of my job functions, <u>I have access to and am familiar with [BONYM]'s records</u> and documents relating to this case (the "Records"), <u>including Shellpoint's business records</u> relating to the servicing of the Loan. . . .

4

. . . .

> 5. The Shellpoint Records document transactions relating to the Loan and were made and are maintained in the regular course of Shellpoint's business consistent with Shellpoint's regular practices, which require that records documenting transactions relating to serviced mortgage loans be made at or near the time of the transactions documented by a person with knowledge of the transactions or from information transmitted by such a person.
>
> 6. Upon becoming [BONYM]'s loan servicer, Shellpoint took custody and control of loan documents and business records of the <u>prior servicer, [BOA], and incorporated all such records into the business records of Shellpoint</u>.

(Emphases added). Sirmans attached Notices of Intent to Accelerate Indebtedness and Foreclose dated November 25, 2013, purportedly issued by Resurgent Mortgage Servicing, a Division of Resurgent Capital Services, L.P. (**Resurgent**), advising the Bautistas of their default under the terms of the Note and Mortgage for failure to make payments as of August 1, 2007 (**2013 Resurgent Default Notices**).[1]

On January 11, 2017, BONYM served responses to the Bautistas's first discovery requests. On January 17, 2017, the Bautistas served their second discovery requests. The parties stipulated to continue the MSJ hearing to March 8, 2017.

On February 28, 2017, the Bautistas filed a supplemental memorandum in opposition to the MSJ, requesting a continuance pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 56(f)[2] because BONYM had not responded to their second discovery requests, the Bautistas were pursuing loan

---

[1] The 2013 Resurgent Default Notices consisted of separate, identical notices, one addressed to Joven D. Bautista, and the other addressed to Colleen Bautista.

[2] HRCP Rule 56(f) provides:

> **When affidavits are unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

modification, and the notices of default attached to the declarations were inadmissible.

On March 1, 2017, BONYM served responses to the Bautistas' second discovery requests.

On March 3, 2017, BONYM filed a supplemental memorandum in support of the MSJ, which included a Declaration of Counsel Re: Standing (**Stone Declaration**), executed by BONYM's counsel Peter T. Stone of TMLF Hawaii, LLLC (**TMLF Hawaii**). Attorney Stone declared that TMLF Hawaii was in possession of the original Note as of April 24, 2015; "had possession of the original Note more than three months before the [July 28, 2015] Complaint was filed"; and had "continuous possession of the Note since April 24, 2015" through the date of the Stone Declaration (*i.e.*, March 3, 2017). The Stone Declaration referred to an attached Exhibit "8," a copy of a "Bailee Letter acknowledging our receipt of the Note from Shellpoint on April 24, 2015."

On March 14, 2017, the MSJ hearing was continued to June 21, 2017.

On March 28, 2017, the Bautistas filed their Motion to Compel, arguing that improper objections raised by BONYM had prevented the Bautistas from obtaining (1) information to confirm whether BONYM had standing to enforce the Note; (2) discovery as to prior servicers; and (3) responses regarding the authenticity and validity of Note indorsements — — all of which were purportedly necessary to defend against BONYM's MSJ. In opposition, BONYM argued, *inter alia*, that the Bautistas were seeking discovery for purposes of delay and the information sought in the first and second discovery requests was not relevant to defending against the MSJ.

The Circuit Court heard the Bautistas' Motion to Compel on May 2, 2017. The Circuit Court denied the motion without prejudice, concluding that the Bautistas sought to compel discovery that was not relevant and was premature.

6

On May 24, 2017, BONYM filed a second supplemental declaration in support of the MSJ.  The declaration by Sirmans (**Second Sirmans Declaration**) stated:

> 2.  . . . <u>I have personal knowledge of the facts and matters stated herein based on my review of the business records</u> described below. . . .
>
> 3.  This Supplemental Declaration incorporates by reference the statements made and exhibits referred to in the [Indebtedness Declaration] and other declarations filed in support of Plaintiff's Motion.
>
> 4.  In the regular performance of my job functions, <u>I have access to and am familiar with [BONYM]'s records</u> and documents relating to this case (the "Records"), <u>including Shellpoint's business records</u> relating to the servicing of the Loan (the "Shellpoint Records").  In making this Supplemental Declaration, I relied upon the Records.
>
> . . . .
>
> 19.  On or about 10/01/2013, <u>Shellpoint acquired Resurgent</u> . . . .
>
> 20.  Effective 3/1/2014, <u>Resurgent became a subservicer</u> of Shellpoint.

(Emphases added).

On May 30, 2017, in further support of its MSJ, BONYM filed a supplemental memorandum and declaration (**Santellan Declaration**) by The Mortgage Law Firm, PLC (**TMLF CA**) employee and Note custodian, Gina Santellan (**Santellan**).  Santellan declared that she executed a Bailee Letter Agreement (**Bailee Letter**), attached as Exhibit "19" to her declaration, that confirmed receipt of the original Note by TMLF CA on April 24, 2015.[3]

On June 7, 2017, the Bautistas filed a supplemental memorandum in opposition, arguing that the copy of the notice of default attached thereto was inadmissible as lacking sufficient foundation; the Bautistas were pursuing loan modification; and the Stone Declaration contradicts the Santellan Declaration.

At the June 21, 2017 MSJ hearing, the Circuit Court granted the MSJ stating that there was no genuine issue as to any material facts and all factors for entitlement to foreclose were

_____

[3]    The Bailee Letter attached to the Stone Declaration and the Bailee Letter attached to the Santellan Declaration are identical.

met pursuant to <u>Bank of Honolulu, N.A. v. Anderson</u>, 3 Haw. App. 545, 551, 654 P.2d 1370, 1375 (1982).[4]

On June 22, 2017, the Circuit Court filed its Order Denying Motion to Compel.

On August 2, 2017, the Circuit Court entered the Foreclosure Decree and its accompanying Foreclosure Judgment. The Foreclosure Decree further instructed that "no action shall be taken by BONYM to enforce this Order for a period of 30 days," for the Bautistas to clarify the status of their loan modification.

The Bautistas timely appealed.

## II.  STANDARD OF REVIEW

### A.  Summary Judgment

"An award of summary judgment is reviewed de novo and 'is appropriate where there is no genuine issue as to the material fact and the moving party is entitled to judgment as a matter of law.'" <u>U.S. Bank N.A. v. Mattos</u>, 140 Hawai'i 26, 30, 398 P.3d 615, 619 (2017) (quoting <u>French v. Haw. Pizza Hut, Inc.</u>, 105 Hawai'i 462, 466, 99 P.3d 1046, 1050 (2004)).  It is well-established that:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

<u>Ibbetson v. Kaiawe</u>, 143 Hawai'i 1, 10-11, 422 P.3d 1, 10-11 (2018) (brackets in original) (quoting <u>Kahale v. City & Cnty. of</u>

---

[4]    Under <u>Anderson</u>, to prove entitlement to the foreclosure remedy, a movant must prove:  "(1) the existence of the Agreement, (2) the terms of the Agreement, (3) default by [Defendant] under the terms of the Agreement, and (4) the giving of the cancellation notice and recordation of an affidavit to such effect."  3 Haw. App. at 551, 654 P.2d at 1375 (citations omitted).

Honolulu, 104 Hawaiʻi 341, 344, 90 P.3d 233, 236 (2004)).  In addition,

> [t]he burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law.  This burden has two components.
>
> First, the moving party has the burden of producing support for its claim that:  (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law.  Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
>
> Second, the moving party bears the ultimate burden of persuasion.  This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.

Mattos, 140 Hawaiʻi at 30, 398 P.3d at 619 (quoting French, 105 Hawaiʻi at 470, 99 P.3d at 1054).

### B.    Motion to Compel Discovery

> The [HRCP] reflect a basic philosophy that a party to a civil action should be entitled to the disclosure of all relevant information in the possession of another person prior to trial, unless the information is privileged. However, the extent to which discovery is permitted under Rule 26 is subject to considerable latitude and the discretion of the trial court.  Thus, the exercise of such discretion will not be disturbed in the absence of a clear abuse of discretion that results in substantial prejudice to a party.  Accordingly, the applicable standard of review on a trial court's ruling on a motion to compel discovery, brought pursuant to HRCP Rule 26, is abuse of discretion.

Anastasi v. Fid. Nat. Title Ins. Co., 137 Hawaiʻi 104, 111–12, 366 P.3d 160, 167–68 (2016) (quoting Hac v. Univ. of Hawaiʻi, 102 Hawaiʻi 92, 100–01, 73 P.3d 46, 54–55 (2003)).

### III.  DISCUSSION

In their first point of error, the Bautistas contend that the MSJ was erroneously granted because (1) the Circuit Court erroneously admitted into evidence notices of default based

9

on testimony from unqualified witnesses; (2) the Circuit Court erroneously concluded that BONYM had possession of the Note and thus had standing to commence the foreclosure action; and (3) the Circuit Court erroneously ruled on the MSJ and violated HRS § 454M-5.5(k)[5] because BONYM was reviewing the Bautistas' pending loan modification at the time. We conclude that BONYM established standing, but the default notices were inadmissible; and we do not reach the Bautistas' third argument.

> **A.    The Circuit Court did not err in concluding that BONYM had standing when it filed the complaint.**

The Bautistas argue that the Circuit Court "wrongly resolved . . . contradictory evidence" in BONYM's favor regarding which law firm entity, in Hawai'i or California, had possession of the Note at the time the Complaint was filed, and that the Santellan Declaration contained inadmissible hearsay. The Bautistas' arguments are without merit.

Under Hawai'i law, a foreclosing party "'must demonstrate that all conditions precedent to foreclosure under the note and mortgage are satisfied and that all steps required by statute have been strictly complied with'" to prove entitlement to foreclose. <u>Wells Fargo Bank, N.A. v. Behrendt</u>, 142 Hawai'i 37, 41, 414 P.3d 89, 93 (2018) (quoting <u>Bank of Am., N.A. v. Reyes-Toledo</u>, 139 Hawai'i 361, 367, 390 P.3d 1248, 1254 (2017)). Typically, this requires that the plaintiff "prove the existence of an agreement, the terms of the agreement, a default by the mortgagor under the terms of the agreement, and giving of the cancellation notice." <u>Reyes-Toledo</u>, 139 Hawai'i at 367,

---

[5]     HRS § 454M-5.5 (2015), entitled "Residential mortgage loan delinquencies and loss mitigation efforts" states in pertinent part:

> (k) A mortgage servicer shall avoid taking steps to foreclose or to refer a borrower to foreclosure if the borrower has requested and is being considered for a loss mitigation option or if the borrower is in a trial or permanent loan modification and is not more than thirty days in default under the loan modification agreement.

390 P.3d at 1254; Anderson, 3 Haw. App. at 551, 654 P.2d at 1375 (citing 55 Am. Jur. 2d Mortgages § 554 (1971); 3 R. Powell, Real Property ¶ 463 (1981)). To establish standing, "a foreclosing plaintiff must necessarily prove its entitlement to enforce the note as it is the default on the note that gives rise to the action." Reyes-Toledo, 139 Hawaiʻi at 368, 390 P.3d at 1255;[6] see also Mattos, 140 Hawaiʻi at 33, 398 P.3d at 622 (defining "person entitled to enforce the note"). This means "a foreclosing plaintiff must establish its standing to bring a lawsuit at the commencement of the proceeding, not merely at the summary judgment stage." Deutsche Bank Nat'l Tr. Co. as Tr. for Morgan Stanley ABS Cap. I Inc. Tr. 2006-NC4 v. Yata, No. SCWC-18-0000922, 2023 WL 2420976, at *14 (Haw. Mar. 9, 2023) (quoting U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Verhagen, 149 Hawai'i 315, 327, 489 P.3d 419, 431 (2021)).[7] In the mortgage foreclosure context, "the requirement of standing overlaps with a plaintiff's burden of proving its

---

[6] In Reyes-Toledo, the supreme court held that summary judgment was improperly granted where a material factual dispute remained as to whether the foreclosing bank "possessed the Note at the time of the filing of the complaint," which raised the issue of whether the bank "had standing to foreclose on the Property at the time it brought the foreclosure action." 139 Hawaiʻi at 370, 390 P.3d at 1257.

[7] In Verhagen, the supreme court held that the lender U.S. Bank had standing where it established possession of the note by laying adequate foundation for the admission of the loan servicer's records, which included a bailee letter showing that the loan servicer sent the note to U.S. Bank's counsel six weeks before the filing of the complaint. Id. at 328, 489 P.3d at 432.

In Yata, the supreme court held that the lender Deutsche Bank did not have standing because it did not demonstrate that it had possession of the note at the time of filing the complaint, where the declarations by employees of the servicing agent were insufficient to establish the admissibility of the loan documents; and that even if the evidence were admissible, the certification of possession of the promissory note predated the filing of the complaint by nine months. 2023 WL 2420976, at *12-15. The supreme court noted that: "[a]n older certification, and a correspondingly larger gap between the certification's date and that of the complaint, would leave more room for a 'genuine issue' as to whether" Deutsche Bank actually possessed the note when it filed its complaint. Id. at *15 (internal quotation marks omitted). The court also noted that Deutsche Bank's counsel filed a declaration that the note was currently being held at the counsel's office, but counsel did not bring the original endorsed note to the hearing, thus providing no documentary evidence demonstrating that Deutsche Bank had possession of the note. Id.

entitlement to enforce the subject promissory note" under HRS § 490:3-301.[8]  Verhagen, 149 Hawai'i at 327, 489 P.3d at 431 (citation omitted).

Here, the evidence presented to the Circuit Court established BONYM's standing to enforce the Note when the July 28, 2015 Complaint was filed.  The Stone Declaration stated that pursuant to the April 24, 2015 Bailee Letter attached as an exhibit, the law firm TMLF Hawaii, as counsel for BONYM, received the original Note on April 24, 2015, and had continuous possession of the Note through the date of the Stone Declaration (i.e., March 3, 2017).  The Stone Declaration also attached an Attorney Affirmation pursuant to HRS § 667-17 (2012)[9] that was filed with the July 28, 2015 Complaint, and identified the Bailee Letter and Attorney Affirmation as records "kept in the course of the law firm's regularly conducted law business activities[.]" The Santellan Declaration established that she was employed by TMLF CA as "the custodian of original loan records of foreclosing mortgagees"; her duties included "taking possession of original loan documents of foreclosing mortgagees represented by both TMLF CA for the foreclosure of the clients' California properties and [TMLF Hawaii] for the foreclosure of the clients' Hawaii properties"; and BONYM and its loan servicer Shellpoint were both clients of TMLF CA and TMLF Hawaii.  For Hawai'i foreclosures, it was Santellan's duty to transmit to TMLF Hawaii "immediately upon its request" the original loan documents as may be needed.  The Santellan Declaration stated that she personally executed the

_____

[8]    HRS § 490:3-301 (2008) defines "[p]erson entitled to enforce" as "holder of the instrument[.]"  A "holder" includes the "person in possession of a negotiable instrument that is payable . . . to bearer . . . ." HRS § 490:1-201 (2008).

[9]    HRS § 667-17 provides, in relevant part:

> **Attorney affirmation in judicial foreclosure.**
> Any attorney who files on behalf of a mortgagee
> seeking to foreclose on a residential property under
> this part shall sign and submit an affirmation that
> the attorney has verified the accuracy of the
> documents submitted, under penalty of perjury and
> subject to applicable rules of professional conduct.

Bailee Letter, acknowledging receipt and possession of the original Note on April 24, 2015. The Santellan Declaration attached a copy of the same Bailee Letter that was attached to the Stone Declaration, as well as a copy of the original Note, and stated that these records were "kept in the course of the law firm's regularly conducted law business activities[.]"

Thus, the evidence presented to the Circuit Court established that BONYM was in possession of the original Note through its agent, *i.e.*, its counsel, at the time the Complaint was filed. See Bank of Am., N.A. v. Anderson, No. CAAP-13-0006277, 2017 WL 122998, at *5 (App. 2017) (mem.) (citation omitted) (holding that the foreclosing party was a holder of a note where its agent was in possession of the note). BONYM established that there were no genuine issues of material fact that it was the holder of the original Note at the time the complaint was filed, and that it had standing to enforce the Note. See Reyes-Toledo, 139 Hawaiʻi at 367, 390 P.3d at 1254 (citations omitted). The Circuit Court's conclusion in this regard was not erroneous. See Mattos, 140 Hawaiʻi at 30, 398 P.3d at 619.

        **B.**    **The Circuit Court erred in concluding that there was no genuine issue of material fact as to whether notice of default was given to the Bautistas.**

The Bautistas contend that there were genuine issues of material fact as to whether they were given a proper notice of default before BONYM commenced this action. In particular, the Bautistas argue that BONYM's declarants did not lay the necessary foundation to properly admit the 2006 Countrywide Default Notice and the 2013 Resurgent Default Notices into evidence. As to the 2006 Countrywide Default Notice, the Bautistas argue that BONYM presented no testimony from a witness who was familiar enough with the record-keeping system of Countrywide to explain how the record was generated in the ordinary course of business or who indicated that Countrywide's records were received by Shellpoint and incorporated into its records. As to the 2013 Resurgent

13

Default Notices, the Bautistas similarly argue that BONYM presented no testimony from a witness who was familiar with Resurgent's record-keeping system or who indicated that Resurgent's records were incorporated into Shellpoint's records. The Bautistas' contentions have merit.

Under HRCP Rule 56(e) and Rules of the Circuit Courts of the State of Hawaiʻi Rule 7(g), "'a declaration in support of a summary judgment motion must be based on personal knowledge, contain facts that would be admissible in evidence, and show that the declarant is competent to testify as to the matters contained within the declaration.'" Behrendt, 142 Hawaiʻi at 44, 414 P.3d at 96 (quoting Mattos, 140 Hawaiʻi at 30, 398 P.3d at 619). Inadmissible evidence "cannot serve as a basis for awarding or denying summary judgment." Id. (internal quotation marks and citation omitted).

An incorporated record is admissible in the absence of testimony regarding its creation if the following three conditions are satisfied:

> Incorporated records are admissible under HRE Rule 803(b)(6) when a custodian or qualified witness testifies that [(1)] the documents were incorporated and kept in the normal course of business, [(2)] that the incorporating business typically relies upon the accuracy of the contents of the documents, and [(3)] the circumstances otherwise indicate the trustworthiness of the document.

Id. at 45, 414 P.3d at 97 (citations omitted). Further, "evidence that a business has incorporated and relied on a record created by another organization speaks directly to that record's reliability. When accompanied by testimony about other circumstances that also indicate the record's trustworthiness, such evidence is an acceptable substitute for testimony concerning a record's actual creation." Verhagen, 149 Hawaiʻi at 326, 489 P.3d at 430.

Here, BONYM submitted the 2006 Countrywide Default Notice and the 2013 Resurgent Default Notices to the Circuit Court as evidence that the Bautistas were given notice of default. It appears that BONYM sought to authenticate the 2006

14

Countrywide Default Notice as a record of a regularly conducted business activity under HRE Rule 803(b)(6) through the Denmon Declaration and the 2016 Sirmans Declaration.  It appears that BONYM sought to authenticate the 2013 Resurgent Default Notices as business records through the 2016 Sirmans Declaration and the 2017 Sirmans Declaration.

> **1.    2006 Countrywide Default Notice:  the Denmon Declaration and the 2016 Sirmans Declaration**

The record reflects that the Countrywide Default Notice was purportedly issued in 2006 by Countrywide.  However, the Denmon Declaration and the 2016 Sirmans Declaration do not mention Countrywide.  Rather, the Denmon Declaration identifies Denmon as "an authorized representative" of Shellpoint, familiar with the type of records maintained by Shellpoint in connection with the Loan.  Similarly, the 2016 Sirmans Declaration identifies Sirmans as a foreclosure litigation specialist of Shellpoint, familiar with Shellpoint's business records relating to the servicing of the Loan.  Further, the Denmon Declaration and the 2016 Sirmans Declaration state that upon becoming BONYM's loan servicer, Shellpoint incorporated the records of the prior servicer, BOA, into Shellpoint's records.  Neither Declaration indicates that Shellpoint incorporated the records of Countrywide into Shellpoint's records, through BOA's records or otherwise; and neither Declaration addresses the remaining criteria in Behrendt for the admission of incorporated business records created by Countrywide.

As a result, BONYM presented no testimony from a witness who had "enough familiarity with the record-keeping system of the business that created the [Countrywide Default Notice, *i.e.*, Countrywide,] to explain how the record was generated in the ordinary course of business."  Behrendt, 142 Hawaiʻi at 45, 414 P.3d at 97.  In addition, BONYM presented no evidence that records created by Countrywide, such as the Countrywide Default Notice, were incorporated into Shellpoint's

15

records.  Accordingly, BONYM did not lay the necessary foundation under <u>Behrendt</u> to admit the Countrywide Default Notice.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Verhagen</u>, 149 Hawaiʻi at 326, 489 P.3d at 430.

**2.    2013 Resurgent Default Notices:  the 2016 Sirmans Declaration and the 2017 Sirmans Declaration**

The record reflects that the Resurgent Default Notices were issued in 2013 by Resurgent.  However, the 2016 Sirmans Declaration does not mention Resurgent, and, as relevant here, the 2017 Sirmans Declaration states only that in 2013, Shellpoint acquired Resurgent, and Resurgent became a subservicer of Shellpoint.

BONYM argues that the 2017 Sirmans Declaration "contains both testimony by Sirmans and attached exhibits that establish Resurgent's records are a part of Shellpoint's business records."  BONYM directs this court to Exhibit 17 of the 2017 Sirmans Declaration, which is a Notice of Transfer of Servicing from Resurgent to Shellpoint.

Exhibit 17, along with Paragraphs 19 and 20 of the 2017 Sirmans Declaration indicate that, in 2013, Shellpoint acquired Resurgent, and Resurgent became a subservicer of Shellpoint. However, nothing in the Declaration indicates that Shellpoint actually incorporated the records of Resurgent, kept the documents in the normal course of business, and relied on the records.  <u>See</u> <u>Behrendt</u>, 142 Hawaiʻi at 45, 414 P.3d at 97. Similarly, nothing in the Declaration indicates the trustworthiness of Resurgent's records.  <u>See</u> <u>Verhagen</u>, 149 Hawaiʻi at 326, 489 P.3d at 430 (stating that loan servicer's testimony that it "reviewed hard copies of the [incorporated] documents, engaged in a 'due diligence' process, and reviewed payment history and accounting associated with the loan" was evidence indicating the trustworthiness of the documents); <u>see also</u> <u>Behrendt</u>, 142 Hawaiʻi at 45, 414 P.3d at 97.  The record thus reflects that BONYM did not lay an adequate foundation under <u>Behrendt</u> for the admission of the 2013 Resurgent Default Notices.

16

For the reasons set forth above, we conclude that the Circuit Court erred by admitting the 2006 Countrywide Default Notice and the 2013 Resurgent Default Notices into evidence. Without admissible evidence that a notice of default was delivered to the Bautistas, there was a genuine issue of material fact as to BONYM's entitlement to foreclose.  See <u>Reyes-Toledo</u>, 139 Hawaiʻi at 367, 390 P.3d at 1254; <u>Anderson</u>, 3 Haw. App. at 551, 654 P.2d at 1375.  The Circuit Court erred in granting summary judgment.  See <u>Mattos</u>, 140 Hawaiʻi at 30, 398 P.3d at 619.

**C.    The Circuit Court abused its discretion in denying the Motion to Compel.**

The Bautistas contend that the Circuit Court abused its discretion in not permitting, and characterizing as "not relevant" and "premature," (1) discovery aimed at ascertaining the Loan's prior servicers; and (2) discovery as to whether the Note indorsements were authentic and valid.  The Bautistas argue that the Circuit Court's denial of their motion to compel "substantially prejudiced" their ability to defend the MSJ.  The first contention has merit.

**1.    Discovery as to prior servicers was relevant.**

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ."  HRCP Rule 26(b)(1)(A).  The Bautistas propounded discovery to investigate purported material discrepancies in the record concerning which entity serviced the Bautistas's Loan, citing <u>Bank of New York Mellon v. Lemay</u>, 137 Hawaiʻi 30, 34, 364 P.3d 928, 932 (App. 2015) for the proposition that "documents establishing . . . the servicer of the loan" are "relevant to defending [defendant's] interest in the property under HRCP Rule 26(b)(1)(A)."  Factually, <u>Lemay</u> is distinguishable because the party requesting discovery was an intervening third-party purchaser seeking to establish plaintiff's standing to enforce the note, <u>id.</u> at 32, 364 P.3d at

17

930, not mortgagors like the Bautistas.  However, in Lemay, this court recognized that the denial of the intervenor's motion to compel precluded it "from defending against the MSJ by denying discovery that may have led to the existence of genuine issues of material fact" and that under HRCP Rule 26(b)(1)(A), the intervenor was permitted to seek discovery of information relevant to defending its interest in the property.  Id. at 35, 364 P.3d at 933.  Here, in light of our determination supra regarding the inadmissibility of the default notices based on the records of prior loan servicers, the Bautistas are similarly entitled to seek discovery related to the prior loan servicers, which is relevant to the Bautistas' interests in defending against the MSJ.  See id.  The Circuit Court abused its discretion by denying the Bautistas' Motion to Compel with regard to the prior loan servicers.  See Anastasi, 137 Hawaiʻi at 111-12, 366 P.3d at 167-68.

> **2.      The denial of discovery regarding the Note indorsements was not an abuse of discretion.**

The Bautistas propounded discovery to ascertain, pursuant to HRS § 490:3-308(a) (2008),[10] the validity of Note indorsements by and/or to Countrywide, Quick Loan Funding, and BONYM,[11] and pertaining to any purported sale of the Loan amongst these entities.  The Circuit Court denied this discovery.

---

[10]      HRS § 490:3-308(a) provides, in pertinent part:

> **Proof of signatures and status as holder in due course.**  (a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings.  If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized[.]

[11]      In their Motion to Compel, the Bautistas sought discovery regarding BONYM's claims that Quick Loan Funding "subsequently endorsed the Note to [Countrywide], which in turn endorsed the Note in blank."  The Bautistas disputed the authenticity and validity of two indorsement signatures on the Note:  (1) a special indorsement by Quick Loan Funding to Countrywide; and (2) a subsequent indorsement-in-blank by Countrywide.

18

The Bautistas contend that the denial of this discovery "prevented them from obtaining evidence to establish a recognized defense," citing HRS § 490:3-308(a).  Under this section, the Bautistas assert that they "were permitted to question the validity of both endorsements as a defense to [BONYM]'s enforcement of the Note."

HRS § 490:3-308(a) provides that:  "[i]n an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is <u>admitted unless specifically denied in the pleadings</u>."  (Emphasis added).  The statute contains a presumption that each signature is authentic and authorized unless a party specifically denies it in the pleadings and introduces evidence "which would support a finding that the signature is forged or unauthorized."  <u>In re Tyrell</u>, 528 B.R. 790, 794 n.11 (Bankr. D. Haw. 2015) (quoting HRS § 490:3-308, cmt. 1).  The Uniform Commercial Code Comment to the statute explains that:  "In the absence of such specific denial the signature stands admitted, and is not in issue.  Nothing in this section is intended, however, to prevent amendment of the pleadings in a proper case."  HRS § 490:3-308 cmt.

Here, the Bautistas do not dispute that their pleading omitted the specific denial required under HRS § 490:3-308(a) to put at issue any signature that the Bautistas claimed was not authentic or authorized.  <u>Id.</u>  They claim, however, that they "could have moved to amend their Answer had [BONYM] given inculpatory responses" to the discovery requests.  This claim is unpersuasive because it relies on the possibility of an amended answer, which in turn, relies on the possibility of receiving "inculpatory responses" from BONYM.  The Bautistas' argument is similar to the speculative challenges rejected by the <u>Tyrell</u> court,[12] as follows:

---

[12]     In <u>Tyrell</u>, the bankruptcy court determined that the lender established it was entitled to enforce the subject note via a declaration stating that it was in possession of the original note and presenting what appeared to be the original, wet-ink version at the hearing.  528 B.R. at 794.

19

> The debtors presented *no* evidence to contradict BOA's proof. Instead, the debtor speculated that some of the endorsements on the note are not genuine. But speculation is not sufficient to create a genuine dispute of fact. Under the Uniform Commercial Code, the signatures on the note are presumed authentic unless a party denies it in the pleadings *and* introduces evidence "which would support a finding that the signature is forged or unauthorized." The burden of proving the authenticity of the signatures does not shift to the party seeking to enforce the instrument unless and until the opposing party makes an adequate showing that the signatures are not authentic.

528 B.R. at 794 (footnotes omitted).

"[T]he extent to which discovery is permitted under Rule 26 is subject to considerable latitude and the discretion of the trial court." Anastasi, 137 Hawaiʻi at 111-12, 366 P.3d at 167-68 (citation omitted). We conclude here that the statutory presumption in HRS § 490:3-308(a) applies, because the Bautistas' answer did not specifically deny the authenticity of, or authorization for, any indorsement, so as to put its authenticity or authorization at issue. Thus, the Circuit Court did not abuse its discretion in denying the Motion to Compel with respect to the indorsements. See id.

### IV. CONCLUSION

For the foregoing reasons, we (1) vacate in part and affirm in part the June 22, 2017 Order Denying without Prejudice Defendants' Motion to Compel Plaintiff-Appellant The Bank of New York Mellon, as Indenture Trustee for Certificateholders CWABS Asset-Backed Notes Trust 2006-SD4's Responses to Defendants' First Request for Answers to Interrogatories, First Request for Production of Documents and Things, and First Request for Admissions to Plaintiff Filed March 28, 2017; (2) vacate the August 2, 2017 Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment for Foreclosure against All Defendants and for Interlocutory Decree of Foreclosure; and (3) vacate the August 2, 2017 Judgment. We

remand for further proceedings consistent with this Memorandum Opinion.

DATED:  Honolulu, Hawaiʻi, March 28, 2023.

On the briefs:

Van-Alan H. Shima,
(Affinity Law Group),
for Defendants-Appellants.

Charles R. Prather,
(TMLF Hawaii LLLC),
for Plaintiff-Appellee.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge